Fleming TULLIS, Plaintiff–Appellant,

v.

LEAR SCHOOL, INC.,
Defendant–Appellee.

No. 88–5582.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1989.

Robert E. Weisberg, Lipman & Weisberg, Miami, Fla., for plaintiff-appellant.

Frank E. Freeman, Miami, Fla., Richard R. Cook, Daytona Beach, Fla., for defendant-appellee.

Before VANCE and COX, Circuit Judges, and KING *, Chief District Judge.

VANCE, Circuit Judge:

Fleming Tullis filed this action alleging he had been discharged from his position as a school bus driver because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The parties waived a jury trial and consented to trial by the district court sitting without a jury. The district court entered findings of fact, conclusions of law

* Honorable James Lawrence King, Chief U.S. District Judge for the Southern District of Florida, sitting by designation.

and judgment for defendant. For the reasons stated below, we reverse.

The Lear School is a private school in Dade County, Florida for students in kindergarten through the twelfth grade. During the period of Mr. Tullis's employment, approximately 275 to 325 children attended the school. Between 1985 and 1987 the school employed approximately six full-time bus drivers. Each driver was responsible for a morning and an afternoon route lasting from forty-five to ninety minutes.

Appellant was born on January 1, 1920. He was hired by the Lear School in September 1982 as a part-time bus driver. In January 1983 he was promoted to a full-time position that required him to perform maintenance duties in addition to his responsibilities as a bus driver. During the summer months Mr. Tullis worked as a bus driver at the school's summer camp.

On January 3, 1986 Dr. Dorothy Lear, the school's principal and owner, advised Mr. Tullis that the school was compelled to terminate him because of increased insurance costs. In a letter explaining the decision, Dr. Lear stated:

> During [the period of Mr. Tullis's employment] Mr. Tullis proved to be capable and reliable, with good moral standards and a sincere concern for others. We appreciate his conscientious approach to his duties during his years of service. However, since he was hired primarily as a bus driver and our insurance carrier requires that 65 be the cut-off for driving, we were obliged to ask for Mr. Fleming's [sic] resignation.

Appellant filed this action on April 6, 1987. In its answer to appellant's complaint, the school denied that its decision to discharge Mr. Tullis was based on his age and asserted instead that the school's bus drivers "need to be extremely alert and able to act quickly in the event of emergencies.... [that] Plaintiff, as of his date of termination, was no longer capable of performing his duties in the manner required by his responsibilities.... that it is necessary for the Defendant to keep the buses and occupants insured and that because of the impaired reaction time of the Plaintiff, the insurance rates were such that the employment of the Plaintiff became prohibitive." The answer further alleged that Mr. Tullis's aged appearance had caused the school to lose income. Appellant's pre-trial stipulation, to which the school did not object, states that the following "Issues of Fact" were to be litigated at trial:

1. Whether Defendant has discriminated against Plaintiff based on his age by terminating him from employment on January 3, 1986.

2. Whether Defendant has discriminated against Plaintiff based on his age by terminating him from employment on January 3, 1986, in willful violation of the Age Discrimination in Employment Act.

3. If Defendant is found to have violated the ADEA, the amount of damages to which Plaintiff is entitled.

■ At the conclusion of the evidence the district court found that age was the determinative factor in the school's decision to dismiss Mr. Tullis. The court also correctly concluded that increased insurance cost is not a factor that would exempt the school from compliance with the ADEA. *See* 29 C.F.R. § 1625.7(f) (1987) ("differentiation based on the average cost of employing older employees as a group is unlawful" except for employee benefit plans qualifying under the exception to the Act found at 29 U.S.C. § 623(f)(2)); *see also Metz v. Transit Mix, Inc.,* 828 F.2d 1202, 1205 (7th Cir.1987) (same). The court found, however, that the school had satisfied the requirements of a bona fide occupational qualification (BFOQ) reasonably necessary to ensure the safe transportation of its students. *See* 29 U.S.C. § 623(f)(1); *Western Air Lines v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985).

■ Appellant argues that the school never asserted a BFOQ defense and that there is no evidence in the record to support it. We agree. Neither in the pleadings nor in the pretrial stipulations did the school advance an occupational qualification as the reason for Mr. Tullis's discharge. Even more importantly, it offered no proof to support a BFOQ defense.

The BFOQ exception to the ADEA, a defense which must be affirmatively asserted, was intended to be an extremely narrow exception to the statute's general prohibition of age discrimination in employment. *Western Air Lines,* 472 U.S. at 412, 105 S.Ct. at 2750 (1985). The Supreme Court has articulated a two-part test for evaluating an employer's eligibility for the exemption. First, "the job qualifications which the employer invokes to justify his discrimination must be *reasonably necessary* to the essence of his business ..." *Id.* at 413, 105 S.Ct. at 2751, quoting *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 (5th Cir.1976) (emphasis in *Western Air Lines*). Second, the employer must be "compelled to rely on age as a proxy for the safety-related job qualifications validated in the first inquiry," by showing either that it had a "factual basis for believing that all or substantially all [persons over the age qualifications] would be unable to perform safely and efficiently the duties of the job involved" or that it is " 'impossible or highly impractical' to deal with the older employees on an individualized basis." *Western Air Lines,* 472 U.S. at 414, 105 S.Ct. at 2751, quoting *Tamiami,* 531 F.2d at 235.

Assuming that the first prong of the test was satisfied, an examination of the record makes clear that the second was not. The district court relied on other reported decisions not part of the record in this case for its findings that "as one grows older, physical examinations lose their predictive value" and that "these tests are too imprecise to determine subtle deficiencies which might ultimately jeopardize the lives of children and motorists." *See, e.g., Rombough v. Federal Aviation Administration,* 594 F.2d 893, 897–98 (2d Cir.1979) (upholding FAA's age limit for commercial airline pilots based on FAA's determination that it was not feasible to individualize assessments of pilots' medical qualifica-

tions). The only evidence on record in *this* case, however, is to the contrary. Appellant offered the expert testimony of Dr. Gail Maguire, a gerontologist, who stated that tests are available which can determine whether individual drivers are capable of performing their jobs safely. This testimony was uncontradicted. The district court's finding that the tests alluded to by Dr. Maguire were "too imprecise" was unsupported by the evidence.

Because the school failed to present any evidence to support the district court's finding that age is a BFOQ for the position of school bus driver, appellant must prevail on his ADEA claim. There was ample evidence to support the trial court's finding that the school's decision to discharge Mr. Tullis was based on his attaining the age of sixty-five.[1] Accordingly, we REVERSE and REMAND the case with instructions to enter judgment for appellant.

---

1. The trial court also found that appellant "has the appearance, speech, and gait of a man approximately ten years older than his chronological age" and that his "mental capacities and physical abilities were degenerated to such an extent that continued job performance could pose a safety threat to the children riding on the bus as well as the public at large." While these observations—made over two years after Mr. Tullis's termination—may be relevant in connection with the provision of an appropriate remedy, they are not probative with respect to the court's ultimate conclusion that the school had met the requirements of a BFOQ defense.