David ENLOW, Plaintiff–Appellant,

v.

SALEM–KEIZER YELLOW CAB CO., INC., an Oregon corporation, Defendant–Appellee.

No. 02–35881.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Filed June 10, 2004.

---

John S. Razor, The Law Office of John S. Razor, Salem, OR, for plaintiff-appellant.

Robert J. Custis, Kent Custis LLP, Portland, OR, for defendant-appellee.

Before: ALARCÓN, FERGUSON, and RAWLINSON, Circuit Judges.

ALARCÓN, Circuit Judge:

David Enlow appeals from the order denying his motion for partial summary judgment regarding his Age Discrimination in Employment Act ("ADEA") claim, and the order granting Salem–Keizer Yellow Cab Co.'s ("Yellow Cab") cross-motion for summary judgment. Mr. Enlow contends that he was entitled to summary judgment because he presented direct evidence that Yellow Cab permanently discharged him solely because of his age.

We affirm the denial of his motion because we conclude that Yellow Cab pre-sented sufficient evidence to raise a genuine issue of material fact regarding whether it terminated Mr. Enlow's employment temporarily without discriminatory intent. We reverse the order granting Yellow Cab's motion for summary judgment, however, because the district erred in concluding that Mr. Enlow failed to present prima facie evidence that Yellow Cab acted with a discriminatory motive or intent.

We analyze the legal questions raised in this appeal separately. In Part One, we explain why we conclude that the district court erred in granting Yellow Cab's motion for summary judgment. In Part Two, we consider whether Yellow Cab presented sufficient evidence in response to Mr. Enlow's motion for partial summary judgment to raise a genuine issue of material fact requiring that the parties have their day in court to determine which party should prevail.

### Facts and Procedural Background

Sometime prior to June 24, 1999, a representative from the Bell Anderson insurance agency in Tacoma, Washington contacted Yellow Cab to see if it would be interested in a new insurance product that could save Yellow Cab a significant amount of money on its annual insurance premiums. After considering the quoted premium, Yellow Cab decided to accept the new policy. It is undisputed that Yellow Cab purchased the insurance policy from Meadowbrook Insurance Group because the cost of its new product, Star Insurance, was more than $10,000 less than the amount Yellow Cab had paid previously to the Reliance Insurance Co. ("Reliance Insurance"). At the time Yellow Cab accepted the Star Insurance offer, it had no knowledge that the policy excluded cover-

age of employees younger than twenty-three or older than seventy years of age.

In order to obtain a business license to operate a "[v]ehicle for hire," the City of Salem, Oregon requires that a taxi cab company carry automobile liability insurance that covers each person employed as a "[t]axicab driver." Salem Revised Code, Title 3, Ch. 34.002(I), (j), 34.010(d). Yellow Cab's liability coverage under the Star Insurance policy was scheduled to take effect on June 25, 1999, the same date that its Reliance Insurance policy was due to expire. Yellow Cab paid $13,200 to Star Insurance, representing a 20% down payment on the new policy, and was scheduled to begin making monthly payments on that policy on July 1, 1999.

The City of Salem required Yellow Cab to inform it of the insurance it planned to use no later than June 25, 1999. Yellow Cab faced suspension of its business license on that date if it could not provide proof of insurance for each taxi cab driver in its employ.[1]

At 4:00 p.m. on June 24, 1999, a Star Insurance agent called Gary Anderson, Yellow Cab's Secretary/Treasurer, to inform him that its new policy did not cover employees younger than twenty-three or older than seventy years of age, and that Mr. Enlow was not eligible for insurance under the new policy because he was seventy-two years old. Prior to June 24, Yellow Cab had not received a copy of the Star Insurance policy, nor had it reviewed the Star Insurance policy's underwriting guidelines or restrictions.

After learning of the age limitation in the Star Insurance policy, Yellow Cab's personnel manager, Richard Haley, called Mr. Enlow into his office and discharged him. We discuss below the conflicting evidence presented by the parties regarding whether the termination of Mr. Enlow's employment was intended to be temporary or permanent, and whether Yellow Cab acted pursuant to a facially discriminatory employment practice to discharge employees over seventy years old.

Mr. Enlow filed a complaint in the district court on September 21, 2000 in which he alleged that Yellow Cab had violated the ADEA and Oregon Revised Statutes § 659.030(1)(a) (renumbered 659A.030(2)(a) in 2001), Oregon's parallel age discrimination statute. He prayed for front and back pay.

On May 18, 2001, Mr. Enlow filed a motion for partial summary judgment on this ADEA claim in which he argued that he had established "a prima facie case" of age discrimination under the ADEA by presenting evidence that he was seventy-two years old, had performed his job to his employer's satisfaction, and was discharged when his employer obtained less expensive automobile liability insurance that did not cover drivers over the age of seventy, while younger employees were retained. He maintained that he was entitled to prevail in the action because his age was the "but for" cause of his termination.

Yellow Cab filed a cross-motion for summary judgment on June 1, 2001 in which it argued that it was entitled to summary judgment because Mr. Enlow had not produced any evidence that Yellow Cab intended to discriminate against him based

1. Salem Revised Code, Title 3, Ch. 30.124 requires as follows:

Whenever any ... policy of insurance is required in connection with any license required by this title, the maintenance thereof in full force and effect shall be a condition of the validity of any license issued under this chapter. Upon receiving information that such ... insurance is, for any reason, no longer in full force and effect, the director shall summarily suspend such license.

on his age. It stated: "For David Enlow to prevail, he must not only satisfy the prima facie requirements of an ADEA claim, but must produce evidence that Yellow Cab 'intended' to discriminate against him because of his age." Yellow Cab maintained that because Mr. Enlow failed to allege or produce evidence of discriminatory motive, he could not prevail under a disparate treatment theory of liability. Yellow Cab asserted that Mr. Enlow failed to present any evidence that Yellow Cab acted with discriminatory animus, or that its proffered reasons for terminating his employment were merely a pretext for impermissible discrimination.

The district court denied Mr. Enlow's partial motion for summary judgment and granted Yellow Cab's motion for summary judgment on November 26, 2001. The district court held that Mr. Enlow "failed to provide evidence of a discriminatory motive [on] the part of the Defendant in the decision to terminate Plaintiff." Mr. Enlow filed a timely notice of appeal of the order granting Yellow Cab's cross-motion for summary judgment, and the order denying his motion for partial summary judgment.[2]

### Part One

■ Mr. Enlow contends that the district court erred in granting Yellow Cab's motion for summary judgment. He maintains that he was not required to produce evidence that the proof relied upon by Yellow Cab to justify the termination of his employment was a pretext for impermissible discrimination. He argues that the familiar *McDonnell Douglas* burden-shifting analysis should not apply to this case because he presented direct evidence

that Yellow Cab terminated his employment because of his age.

We review a district court's grant of summary judgment de novo. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 849 (9th Cir.2000). We may affirm the district court's order granting summary judgment on any basis that is supported in the record. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1030 (9th Cir.2004).

Under the ADEA, employers may not "fail or refuse to hire or ... discharge any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court identified two theories of employment discrimination: disparate treatment and disparate impact. *Id.* at 609, 113 S.Ct. 1701 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). In this appeal, Mr. Enlow relies solely on the disparate treatment theory of liability.

■ Disparate treatment is demonstrated when " '[t]he employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics].' " *Id.* (second alteration in original) (quoting *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. 1843). More recently, the Court instructed that " 'liability [in a disparate treatment claim] depends on whether the protected trait (under the ADEA, age) *actually* motivated the employer's decision.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

---

**2.** On this appeal, Mr. Enlow has abandoned his state age discrimination claim. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182

F.3d 1096, 1105 (9th Cir.1999) ("Issues appealed but not briefed are deemed abandoned.").

141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (emphasis added) (quoting *Hazen,* 507 U.S. at 610, 113 S.Ct. 1701). The Court held that "the plaintiff's age must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" *Id.* (alteration in original) (quoting *Hazen,* 507 U.S. at 610, 113 S.Ct. 1701).

When a plaintiff alleges disparate treatment based on direct evidence in an ADEA claim, we do not apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in determining whether the evidence is sufficient to defeat a motion for summary judgment. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court instructed that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Id.* at 121, 105 S.Ct. 613; *see also AARP v. Farmers Group, Inc.,* 943 F.2d 996, 1000 n. 7 (9th Cir.1991) (stating that "[o]rdinarily, however, when there is direct evidence of discrimination, such as when a provision[of a pension plan] is discriminatory on its face, the prima facie case analysis is inapplicable") Direct evidence, in the context of an ADEA claim, is defined as "'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the *fact finder* to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Walton v. McDonnell Douglas Corp.,* 167 F.3d 423, 426 (8th Cir.1999) (alteration in original, emphasis added) (quoting *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993)).

The *McDonnell Douglas* formula applies under the ADEA where an employee must rely on *circumstantial* evidence that he or she was at least forty years old, met the requisite qualifications for the job, and was discharged while younger employees were retained. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. It "creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under *McDonnell Douglas,* if an employee presents prima facie circumstantial evidence of discrimination, the burden shifts to the employer to "'produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason.'" *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (alteration in original) (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). This burden-shifting scheme is designed to assure that the "'plaintiff[has] his day in court despite the unavailability of direct evidence.'" *Trans World Airlines,* 469 U.S. at 121, 105 S.Ct. 613 (alteration in original) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979)).

Mr. Enlow presented direct evidence that Yellow Cab permanently terminated his employment because he was seventy-two years old and the new insurance policy did not cover employees over the age of seventy. Thus, Mr. Enlow carried his "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters,* 431 U.S. at 358, 97 S.Ct. 1843.

> [W]hen a plaintiff has established a prima facie inference of disparate treatment through *direct* or circumstantial evidence, he will *necessarily* have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision.... When [the] ev-

idence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment.

*Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir.1996) (alterations in original, first emphasis added, internal quotation marks omitted) (quoting *Sischo–Nounejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991)).

Yellow Cab presented evidence in opposition to Mr. Enlow's motion for partial summary judgment that the sole reason it *temporarily* terminated Mr. Enlow's employment was to prevent the City of Salem from closing its business doors because it lacked proof that each of its drivers was insured. In reviewing the district court's decision to grant Yellow Cab's motion for summary judgment, we must view the evidence in the light most favorable to Mr. Enlow. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1287 (9th Cir.2000).

The district court granted Yellow Cab's motion for summary judgment because it concluded that Mr. Enlow failed to produce evidence that Yellow Cab had a discriminatory motive for terminating Mr. Enlow's employment. In reaching this conclusion, the district court erroneously applied the *McDonnell Douglas* burden-shifting analysis. Mr. Enlow presented direct evidence that would support an inference that his employment was terminated by an age discriminatory employment practice. Mr. Enlow relied on the direct evidence that his employment was terminated because the Star Insurance policy did not cover employees who were older than seventy years of age. This evidence was sufficient to support an inference that by terminating his employment after purchasing the Star Insurance policy, Yellow Cab adopted a practice of intentionally discriminating against employees over seventy years of age. By granting summary judgment in favor of Yellow Cab, the district court denied Mr. Enlow his day in court " 'with respect to the legitimacy or bona fides of [Yellow Cab's] articulated reason for its employment decision.' " *Sischo–Nounejad,* 934 F.2d at 1111 (quoting *Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985)). At trial, Mr. Enlow will bear the burden of persuading the trier of fact by a preponderance of the evidence that Yellow Cab's motive in terminating Mr. Enlow's employment was discriminatory. *See Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (" 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' ") (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

### Part Two

Mr. Enlow also seeks reversal of the order denying his motion for partial summary judgment in his ADEA claim. He maintains that he is entitled to summary judgment without a trial because he has presented direct evidence that his employment was terminated because employees who are more than seventy years old are not covered under the Star Insurance policy. He requests that we instruct the district court to enter judgment in his favor.

It is undisputed that Yellow Cab did not purchase the Star Insurance policy in order to discriminate against employees younger than twenty-three and older than seventy years of age. In his supplemental brief to this court, Mr. Enlow concedes that Yellow Cab was not aware of the Star Insurance policy's discriminatory provision when it purchased it. Accordingly, Mr. Enlow's reliance on *UAW v. Johnson Con-*

trols, Inc., 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) is misplaced. In *Johnson Controls,* the employer was aware of the discriminatory provision when it adopted an employment practice barring all women, except those whose infertility was medically documented, from jobs involving actual or potential lead exposure exceeding governmental standards. *Id.* at 198–99, 111 S.Ct. 1196. Yellow Cab's temporary discharge of Mr. Enlow was in reaction to an unanticipated exigent circumstance that threatened the suspension of its license to conduct business.

Likewise, *City of Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) is readily distinguishable. In *Manhart,* the Department of Water and Power knowingly and intentionally administered a retirement, disability and death-benefit program that required its female employees to make larger contributions to the pension fund than its male employees. *Id.* at 704, 98 S.Ct. 1370. The decision to adopt an employment practice that treated men differently from women was carefully calculated, "[b]ased on a study of mortality tables and [the Department's] own experience." *Id.* at 705, 98 S.Ct. 1370. Mr. Enlow has presented no evidence that establishes that Yellow Cab had any knowledge of the discriminatory provisions in the Star Insurance policy when it purchased the policy. Nor has Mr. Enlow presented any evidence that Yellow Cab deliberately adopted an employment practice or program in order to discriminate against persons over forty in violation of the ADEA. Thus, Mr. Enlow failed to establish, as required by the Supreme Court's more recent *Hazen* decision, that Yellow Cab *"relied"* upon a formal, facially discriminatory policy requiring adverse treatment" of older employees when it purchased the Star Insurance policy. *Hazen,* 507 U.S. at 610, 113 S.Ct. 1701

(emphasis added) (explaining that *Manhart* presented a case of disparate treatment because the employer "relied" on a "formal" policy requiring discrimination). Mr. Enlow has not demonstrated that his age "actually motivated [his] employer's decision" to purchase a new insurance policy. *Id.*

In reviewing the denial of Mr. Enlow's motion for partial summary judgment, we must view the evidence in the light most favorable to Yellow Cab. *Coleman,* 232 F.3d at 1287. In response to Mr. Enlow's motion, Yellow Cab offered evidence of a legitimate, nondiscriminatory reason for *temporarily* terminating Mr. Enlow's employment. Mr. Haley alleged in his affidavit that "the only reason why Mr. Enlow was terminated was because the company made a switch in auto insurance carriers and the new carrier did not insure drivers under twenty-three years of age or over the age of seventy. The saving in annual premium expense was the only reason why Yellow Cab switched insurance." He also alleged that "[a]t no time did Yellow Cab search for an insurance carrier who did not insure older workers in order to terminate Mr. Enlow's position with the company." Mr. Haley further stated that:

> Mr. Enlow was ... a commissioned employee. He was paid a percentage of the fares he took in. All of his taxes and expenses were paid out of his share of the gross fares. Terminating Mr. Enlow did not have any direct economic benefit in that Yellow Cab did not experience a savings in unpaid salaries or benefits. Indeed, terminating a driver actually made Yellow Cab one more driver short.

Mr. Anderson alleged that Yellow Cab adopted the new Star Insurance policy without knowledge that it did not insure

drivers over the age of seventy or under the age of twenty-three. He stated that Yellow Cab did not learn of the age limitation until 4:00 p.m., on the day before it was required to provide proof of insurance to the City of Salem or face the loss of its business license. Mr. Anderson declared that the possibility of renewing its old insurance policy "was no longer available" at the time Yellow Cab learned of the new policy's age limitation.

Yellow Cab also produced evidence that Mr. Haley had indicated to Mr. Enlow that the termination of his employment was only "temporary until coverage could be resolved or obtained." Immediately following Mr. Enlow's termination, Mr. Anderson made several phone calls on Mr. Enlow's behalf. "I personally called Cherry City cab company in order to find Mr. Enlow work while we sorted out the insurance coverage problem." Mr. Anderson was successful in securing a job interview for Mr. Enlow with the Blue Jay Cab Company. Mr. Enlow was hired to begin work with the Blue Jay Cab Company within a week of his termination from Yellow Cab.

Finally, Yellow Cab introduced evidence that after it discharged Mr. Enlow, Mr. Anderson spoke with representatives at Star Insurance to see if they would waive the age restriction in their policy so that Mr. Enlow could be reemployed. Mr. Anderson alleged: "I was able to talk the insurance carrier into considering Mr. Enlow for insurance if he would be willing to consider submitting to a medical checkup." Yellow Cab then presented Mr. Enlow with the option of taking a physical examination with the hope that Star Insurance would agree to insure Mr. Enlow on the basis of a clean bill of health. Mr. Anderson stated in his affidavit that "Mr. Enlow indicated that he would not agree to a physical and declined the offer to return

to Yellow Cab." This evidence directly conflicts with Mr. Enlow's allegation that he was *permanently* terminated from his employment solely because of his age.

■ Viewed in the light most favorable to Yellow Cab, this evidence shows that it did not have an explicit facially discriminatory employment practice to terminate the employment of taxi cab drivers who were more than seventy years old. Instead, the evidence shows that Mr. Enlow was temporarily discharged to avoid termination of Yellow Cab's business license while it negotiated with Star Insurance to waive the age exclusion provisions in its policy. As a demonstration of its intent to protect Mr. Enlow's employment rights, Yellow Cab successfully obtained temporary employment for him with another cab company. Yellow Cab also obtained Star Insurance's tentative agreement to waive the age-based exclusion of coverage if Mr. Enlow would submit to a physical examination. Mr. Enlow rejected Star Insurance's willingness to consider waiving its age exclusion provisions if he could pass a physical examination. He also declined Yellow Cab's offer to reemploy him. The evidence offered by Yellow Cab presents a genuine issue of material fact regarding whether the termination of employment was temporary or permanent and whether Yellow Cab acted with discriminatory animus against employees over forty years of age. Accordingly, the district court did not err in denying Mr. Enlow's motion for partial summary judgment.

### Conclusion

We conclude that Mr. Enlow presented sufficient direct evidence to support an inference that Yellow Cab's decision to terminate his employment was motivated by discriminatory animus. For that reason, the district court erred in granting Yellow Cab's motion for summary judg-

ment on the ground that Mr. Enlow failed to present evidence that Yellow Cab acted with discriminatory animus.

We also hold that Yellow Cab presented sufficient evidence to demonstrate that its temporary discharge of Mr. Enlow was without discriminatory intent, and was solely to avoid losing its business license based on the fact that all of its employees were not covered by automobile liability insurance. Mr. Enlow failed to present any evidence that Yellow Cab acted pursuant to an explicit facially discriminatory company practice to fire taxi cab drivers who were over seventy years of age. Thus, the district court did not err in denying Mr. Enlow's partial motion for summary judgment. Because there are genuine issues of material fact in dispute, we reject Mr. Enlow's request that we instruct the district court to grant his motion for summary judgment.

We **VACATE** the order granting Yellow Cab's motion for summary judgment and **AFFIRM** the order denying Mr. Enlow's motion for partial summary judgment.

Each side shall bear its own costs.

FERGUSON, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision to vacate the grant of summary judgment in favor of defendant Salem–Keizer Yellow Cab. I dissent from the majority's denial of summary judgment to plaintiff David Enlow. The uncontested facts establish a violation of the Age Discrimination in Employment Act ("ADEA"). In ruling otherwise, the majority fundamentally misconstrues the discriminatory intent that must be shown in a case of facial discrimination.

Mr. Enlow, a 72–year–old cabdriver, was discharged from Yellow Cab because the company's new insurance policy did not cover drivers over 70. The majority remands this case for a fact finder to determine whether Yellow Cab acted with discriminatory animus. Yet there are no material facts in dispute. The *only* question to be resolved is whether, as a matter of law, the Age Discrimination in Employment Act ("ADEA") is violated where an employer terminates a 72–year–old employee because the company's chosen insurance policy does not cover drivers over 70.

The answer to that question must be yes. Where an employer intentionally uses age as a criterion for an employment decision, engaging in facial discrimination, it cannot be a defense that the employer sought only to save costs. Nor can the employer escape liability by claiming that exigent circumstances excused its actions. The ADEA prohibited age discrimination while carefully enumerating several exceptions to the rule. *See* 29 U.S.C. § 623(f). None of these exceptions applies here. The majority's implicit creation of a new exception for employment actions allegedly taken in good faith dilutes the protections Congress sought to provide for older workers.

I.

Yellow Cab contends that Mr. Enlow did not establish the discriminatory intent required for an ADEA disparate treatment claim, as described by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In that case, the Supreme Court held that an employer does not violate the ADEA by terminating an older employee in order to prevent his pension benefits from vesting, even if pension status is correlated with age. *Id.* at 611–12, 113 S.Ct. 1701. The Court reasoned that age and pension status are "analytically distinct," and noted that a younger employee who has worked for a particular employer his entire career

might be closer to qualifying for pension benefits than an older employee newly hired. *Id.* at 611, 113 S.Ct. 1701.

Yellow Cab claims that here, too, it discharged Mr. Enlow based on a classification—insurability—that is analytically distinct from age. Unlike the situation in *Hazen,* however, there is not merely a correlation between age and qualification for insurance coverage, but absolute identification: Mr. Enlow did not qualify for Yellow Cab's new insurance policy *because* he was over 70, and as a result, the company fired him. The cab company acknowledged that but for Mr. Enlow's age, he would not have been discharged. Thus, Mr. Enlow meets *Hazen's* requirement that an employee show that age "actually played a role in [the employer's decision-making] process and had a determinative influence on the out-come." 507 U.S. at 610, 113 S.Ct. 1701.

Yellow Cab's attempt to separate out insurability from age is unavailing. In *City of Los Angeles Dept. of Water & Power v. Manhart,* the Supreme Court rejected the employer's argument that a plan requiring women to make larger monthly contributions to a pension plan than men was "based on the factor of longevity rather than sex." 435 U.S. 702, 712, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). The Court stated: "It is plain ... that any individual's life expectancy is based on a number of factors, of which sex is only one.... [O]ne cannot say that an actuarial distinction based entirely on sex is based on any other factor other than sex. Sex is exactly what it is based on." *Id.* at 712–13, 98 S.Ct. 1370 (internal citations omitted). Here, too, an individual's insurance risk is based on numerous factors, but Mr. Enlow's inability to qualify for insurance coverage was based solely on age. The cab company cannot splice out insurability from age where, as in *Manhart,* the prof-

fered basis for its employment practice coincides absolutely with a protected trait.

Nor can Yellow Cab escape liability by shifting blame to the insurance carrier that established the coverage limits. The Supreme Court held more than twenty years ago that an employer violated Title VII where the retirement plans offered to its employees provided lower monthly benefits to women, even though the discriminatory conditions were supplied by private insurers. *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983). The employer "cannot disclaim responsibility for the discriminatory features of the insurers' options," and violates Title VII "regardless of whether third parties are also involved in the discrimination." *Id.* at 1089, 103 S.Ct. 3492. Here, too, Yellow Cab is no less responsible for violating the ADEA because it did so in response to an insurance policy it selected from a third party.

Furthermore, even assuming that the company was not motivated by stigmatizing stereotypes of older workers, Yellow Cab has violated the ADEA. *Hazen* explains that "[i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." 507 U.S. at 610, 113 S.Ct. 1701. Congress enacted the ADEA in order to address the concern that "older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Id. Hazen* further stated that where an employer's decision is "wholly motivated by factors other than age," the problem presented by such stereotyping "disappears." *Id.* at 611, 113 S.Ct. 1701.

This interpretation of the ADEA's rationale, however, does not shield Yellow Cab. Precedent declares that in a case of

facial discrimination, the explicit use of a protected trait as a criterion for the employer's action establishes discriminatory intent, regardless of the employer's subjective motivations. "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Int'l Union, UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (finding an employer's fetal-protection policy to be sex discrimination in violation of Title VII where it excluded women of child-bearing capacity from jobs exposing them to lead). There, the Supreme Court noted that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy." *Id.* See also *Frank v. United Airlines, Inc.,* 216 F.3d 845, 854 (9th Cir.2000) (reaffirming that "where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender ... a plaintiff need not otherwise establish the presence of discriminatory intent.")

The majority attempts to distinguish *Johnson Controls,* as well as *Manhart,* on the grounds that Yellow Cab was not aware of the insurance policy's age-based provision when it purchased it. That fact is simply irrelevant. The employer engaged in facial discrimination not when it purchased the policy, but when it terminated Mr. Enlow. In addition, the employment decision was not less offensive under *Johnson Controls* or *Manhart* because it only affected one individual, or because the discrimination was not announced in a formal, written policy. The crucial fact, in each case, is that the employer openly and explicitly relied on an impermissible classification, in this case age.

Although the principle that, in a case of facial discrimination, an employer's subjective motivations are not controlling, was originally announced in Title VII cases, this Court has applied that principle to claims under the ADEA. In *Equal Employment Opportunity Comm'n v. Borden's, Inc.,* we stated that where a severance policy denied a benefit to workers 55 and older, no showing of the employer's ill will toward older people was required.[1] 724 F.2d 1390, 1393 (9th Cir.1984), *overruled on other grounds in Pub. Employees Ret. Sys. of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), *superceded by revision to* 29 U.S.C. §§ 621, 623.

Indeed, there is good reason to find discriminatory intent where an employer's decision or policy discriminates on its face: where differential treatment based on a protected trait is open and explicit, older workers are stigmatized on account of their age regardless of the employer's subjective motivations. Moreover, although there is no evidence that Yellow Cab itself espoused stereotypes of older workers, by dismissing Mr. Enlow because of an insurance policy that did not cover drivers over 70, it ratified the insurance company's categorical judgment that drivers over 70 were not competent. Whatever the rights of the insurance business to set coverage limits as it deems appropriate, Yellow

---

1. *Borden's* held that a policy that denied severance pay only to employees who were eligible for retirement constituted disparate treatment. 724 F.2d at 1393. While that holding may not survive *Hazen,* the *Borden's* analysis of the intent required in facial discrimination cases is still apt. Moreover, in a case decided after *Hazen,* the Third Circuit found a separate inquiry into an employer's subjective motivations unnecessary in a case of facial age discrimination. *See DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 726 (3d Cir. 1995).

Cab's termination of an older employee based on the new policy's age exclusion implicated the stigmatizing stereotypes to which *Hazen* refers. Mr. Enlow's dismissal falls squarely within the range of discriminatory employment actions that the ADEA sought to prevent.[2]

The majority seems to believe that to establish disparate treatment, Mr. Enlow must show that Yellow Cab acted in bad faith. The majority opinion recites at length Yellow Cab's claims that it found out that Mr. Enlow would not be insured only one day before it had to prove to the city of Salem that all its employees were covered. In the same vein, the opinion recounts that the cab company helped secure other employment for Mr. Enlow, and, according to Yellow Cab, offered to re-hire him if he took a physical exam.[3] Even assuming the truth of these claims, the "emergency situation" facing the cab company was, at least in part, of its own making: it chose a new insurance carrier without ever bothering to look at a copy of the new policy's terms, and without verifying that all of its employees would be covered. It is also questionable whether requiring Mr. Enlow alone to submit to a physical exam as a condition of re-employment, solely because of his age, would itself violate the ADEA.

In the end, we need not judge whether Yellow Cab acted with ill will. Once discriminatory intent is established, as it is here, the plaintiff need not make an additional showing that the employer acted in bad faith. While an employer's good faith is relevant to a decision to impose liquidated damages, *see Hazen*, 507 U.S. at 614–617, 113 S.Ct. 1701, it does not exempt an employer from liability. To sympathize with Yellow Cab's predicament is one thing; to create a new "good faith" exception to the ADEA, where the statute already provides exceptions that protect employers' legitimate interests, is quite another.

## II.

One of these ADEA exceptions, in fact, was invoked by Yellow Cab and addressed by both parties in their motions for summary judgment. Yellow Cab asserted below that its employment decision fell within the ADEA exception for actions taken "where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). This affirmative defense, however, fails as a matter of law. Here, Yellow Cab differentiated Mr. Enlow from other drivers precisely because of his age—making the defense inapplicable. *See EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1541 (2d Cir.1996) ("By its terms, the statute supplies an exception for 'age-neutral' decisions based on other factors such as health or even education that might be correlated with age ... not an exception for policies that explicitly but reasonably discriminate based on age.").

---

2. In addition, by its own terms, the ADEA's purpose is to promote the employment of older persons based on their ability rather than their age. 29 U.S.C. § 621(b). Yellow Cab's own pleadings acknowledge that Mr. Enlow, a nineteen-year employee of the company, maintained solid job performance. Yellow Cab's supplemental brief to this Court reiterated that the cab company did not consider Mr. Enlow to be an unsafe driver. His dismissal in spite of his continued ability violates the spirit and the letter of the ADEA.

3. The majority repeatedly states that according to Yellow Cab, the termination of Mr. Enlow was to be temporary. The opinion does not explain, however, why this would make a difference. The ADEA prohibits age discrimination "with respect to ... compensation, terms, conditions, or privileges of employment ...". 29 U.S.C. § 623(a)(1). It does not only prohibit "permanent" termination. Thus, although this fact is contested, it is not a *material* fact requiring us to remand the case.

Moreover, the Equal Employment Opportunity Commission ("EEOC") regulations interpreting the ADEA state that the "reasonable factors other than age" defense is unavailable where an "employment practice uses age as a limiting criterion." 29 C.F.R. § 1625.7(c).

The EEOC regulations also provide that a differentiation based on the average cost of employing older workers does not qualify under this exception. 29 C.F.R. § 1625.7(f). Citing that regulation, the Eleventh Circuit rejected a cost-savings defense in a case with almost identical facts as the case before us. In *Tullis v. Lear School, Inc.*, 874 F.2d 1489 (11th Cir.1989), a private school fired a 66–year-old bus driver because its insurance carrier only covered drivers 65 or younger. The Eleventh Circuit ruled that the school's decision to dismiss the driver was based on his age, *id.* at 1490–91, and that the increased insurance cost for the school did not exempt it from complying with the ADEA. *Id.* at 1490.

### III.

Mr. Enlow's claim of age discrimination should be granted on summary judgment. There are no material facts for a trier of fact to determine. As a matter of law, the termination of an employee because he is older than the age limitation of his employer's insurance policy violates the ADEA, even if the employer chose that policy to save money. Had Yellow Cab terminated a female employee because its insurance policy did not cover women, or discharged an Asian employee because its insurance excluded Asians, we would surely have repudiated those actions. As certainly, Yellow Cab's decision to terminate a 72–year-old cabdriver because its new insurance excluded drivers over 70 deserves our censure. Anti-discrimination law would mean nothing if an employer could justify a fa-

cially discriminatory action by invoking its bottom line.