**David ENLOW, Plaintiff–Appellant,**

v.

**SALEM–KEIZER YELLOW CAB CO., INC., an Oregon corporation, Defendant–Appellee.**

No. 02–35881.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Filed June 10, 2004.

Amended Nov. 2, 2004.

John S. Razor, The Law Office of John S. Razor, Salem, OR, for the plaintiff-appellant.

Robert J. Custis, Kent Custis LLP, Portland, OR, for the defendant-appellee.

Before: ALARCÓN, FERGUSON, and RAWLINSON, Circuit Judges.

Opinion by Judge ALARCÓN; Partial Concurrence and Partial Dissent by Judge FERGUSON.

## ORDER

The court's opinion, filed June 10, 2004, [371 F.3d 645] is amended as follows:

The second paragraph on slip op. 7621 [371 F.3d at 647] that reads:

We affirm the denial of his motion because we conclude that Yellow Cab presented sufficient evidence to raise a genuine issue of material fact regarding whether it terminated Mr. Enlow's employment temporarily without discriminatory intent. We reverse the order granting Yellow Cab's motion for summary judgment, however, because the district erred in concluding that Mr. Enlow failed to present prima facie evidence that Yellow Cab acted with a discriminatory motive or intent.

is deleted.

The following paragraph shall be inserted on page 7621 [371 F.3d at 647] and substituted for the deleted text.

We affirm the denial of his motion because we conclude that Yellow Cab presented sufficient evidence to raise a genuine issue of material fact regarding whether, as asserted in its response to Enlow's motion for partial summary judgment, it terminated Mr. Enlow's employment *temporarily* based on a bona fide occupational qualification ("BFOQ") or because of reasonable factors other than age ("RFOA"). We reverse the order granting Yellow Cab's motion for summary judgment, however, because the district erred in concluding that Mr. Enlow failed to present prima

facie evidence that Yellow Cab acted with a discriminatory motive or intent.

On the sixth line of slip op. 7623 [371 F.3d at 648], delete "seventy-two" and substitute "seventy-three" for the deleted text.

On slip op. 7623 [371 F.3d at 648], the second sentence of the second paragraph reads:

> We discuss below the conflicting evidence presented by the parties regarding whether the termination of Mr. Enlow's employment was intended to be temporary or permanent, and whether Yellow Cab acted pursuant to a facially discriminatory employment practice to discharge employees over seventy years old.

is deleted.

The following sentence shall be inserted on slip op. 7623 [371 F.3d at 648] and substituted for the deleted text:

> We discuss below the conflicting evidence presented by the parties regarding whether Mr. Enlow's employment was permanently terminated solely to save costs, or whether Yellow Cab intended to interrupt his employment temporarily in order to avoid losing its business license.

In the fifth line of the last paragraph on slip op. 7623 [371 F.3d at 648] delete "seventy-two years old" and substitute "seventy-three years old" for the deleted text.

In the first paragraph under Part One on slip op. 7624 [371 F.3d at 649] insert the words "in order to survive a motion for summary judgment" at the end of the second sentence.

In the first line of the paragraph beginning on line 8 on slip op. 7627 [371 F.3d at 650] insert "In his opposition to the motion for summary judgment," before the words "Mr. Enlow".

On line 10 of slip op. 7627 [371 F.3d at 650] delete "seventy-two years old" and substitute "seventy-three years old" for the deleted text.

On line 11 of slip op. 7627 [371 F.3d at 650] insert the following sentences after the word "seventy."

> In an affidavit filed in support of his motion for summary judgment, Mr. Enlow declared that "[a]t no time did the defendant offer me an unconditional offer of re-employment." He further, stated that "[m]y understanding at the time of my termination was that I was terminated and would no longer be working for the Defendant."

On lines 15 and 16 of slip op. 7628 [371 F.3d at 651] delete the words "by an age discriminatory employment practice" and substitute "because he was over the age of seventy" for the deleted text.

Beginning with line 16 of slip op. 7628 [371 F.3d at 651] delete:

> Mr. Enlow relied on the direct evidence that his employment was terminated because the Star Insurance policy did not cover employees who were older than seventy years of age. This evidence was sufficient to support an inference that by terminating his employment after purchasing the Star Insurance policy, Yellow Cab adopted a practice of intentionally discriminating against employees over seventy years of age.

Beginning with line 28 on slip op. 7628 [371 F.3d at 651] delete:

> At trial, Mr. Enlow will bear the burden of persuading the trier of fact by a preponderance of the evidence that Yellow Cab's motive in terminating Mr. Enlow's employment was discriminatory. *See Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (" 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff.' ") (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

Beginning with line 15 on slip op. 7629 [371 F.3d at 651–52] delete the following text to line 16 on slip op. 7630 [371 F.3d at 652].

Accordingly, Mr. Enlow's reliance on *UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) is misplaced. In *Johnson Controls,* the employer was aware of the discriminatory provision when it adopted an employment practice barring all women, except those whose infertility was medically documented, from jobs involving actual or potential lead exposure exceeding governmental standards. *Id.* at 198–99, 111 S.Ct. 1196. Yellow Cab's temporary discharge of Mr. Enlow was in reaction to an unanticipated exigent circumstance that threatened the suspension of its license to conduct business.

Likewise, *City of Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) is readily distinguishable. In *Manhart,* the Department of Water and Power knowingly and intentionally administered a retirement, disability and death-benefit program that required its female employees to make larger contributions to the pension fund that its male employees. *Id.* at 704, 98 S.Ct. 1370. The decision to adopt an employment practice that treated men differently from women was carefully calculated, "[b]ased on a study of mortality tables and [the Department's] own experience." *Id.* at 705, 98 S.Ct. 1370. Mr. Enlow has presented no evidence that establishes that Yellow Cab had any knowledge of the discriminatory provisions in the Star Insurance policy when it purchased the policy. Nor has Mr. Enlow presented any evidence that Yellow Cab deliberately adopted an employment practice or

program in order to discriminate against persons over forty in violation of the ADEA. Thus, Mr. Enlow failed to establish, as required by the Supreme Court's more recent *Hazen* decision, that Yellow Cab *"relied"* upon a formal, facially discriminatory policy requiring adverse treatment" of older employees when it purchased the Star Insurance policy. *Hazen,* 507 U.S. at 610, 113 S.Ct. 1701 (emphasis added) (explaining that *Manhart* presented a case of disparate treatment because the employer "relied" on a "formal" policy requiring discrimination). Mr. Enlow has not demonstrated that his age "actually motivated [his] employer's decision" to purchase a new insurance policy. *Id.*

On line 21 and 22 of slip op. 7630 [371 F.3d at 652] delete:

"of a legitimate, nondiscriminatory reason for *temporarily* terminating Mr. Enlow's employment."

On line 21 and 22 of slip op. 7630 [371 F.3d at 652] substitute the following for the deleted text:

"that Mr. Enlow's employment was not permanently terminated."

On line 22 of slip op. 7630 [371 F.3d at 652] insert after "Mr. Haley" the following text:

", Yellow Cab's personnel manager,"

One line 22 of slip op. 7630 [371 F.3d at 652] delete the word "alleged" and substitute the word "declared" for the deleted word.

On line 5 of slip op. 7631 [371 F.3d at 652] delete "Mr. Anderson alleged". Insert "Mr. Gary Anderson, Yellow Cab's Secretary/ Treasurer, declared" and substitute for the deleted text.

On line 20 of slip op. 7631 [371 F.3d at 653] insert after the word "behalf.", "Mr. Anderson declared:".

On line 25 of slip op. 7631 [371 F.3d at 653], delete "of his termination from Yel-.

low Cab" and substitute "of the termination of his employment with Yellow Cab" for the deleted text.

On line 31 of slip op. 7631 [371 F.3d at 653], delete "alleged" and substitute "declared".

The paragraph on slip op. 7632 [371 F.3d at 653] that reads:

Viewed in the light most favorable to Yellow Cab, this evidence shows that it did not have an explicit facially discriminatory employment practice to terminate the employment of taxi cab drivers who were more than seventy years old. Instead, the evidence shows that Mr. Enlow was temporarily discharged to avoid termination of Yellow Cab's business license while it negotiated with Star Insurance to waive the age exclusion provisions in its policy. As a demonstration of its intent to protect Mr. Enlow's employment rights, Yellow Cab successfully obtained temporary employment for him with another cab company. Yellow Cab also obtained Star Insurance's tentative agreement to waive the age-based exclusion of coverage if Mr. Enlow would submit to a physical examination. Mr. Enlow rejected Star Insurance's willingness to consider waiving its age exclusion provisions if he could pass a physical examination. He also declined Yellow Cab's offer to reemploy him. The evidence offered by Yellow Cab presents a genuine issue of material fact regarding whether the termination of employment was temporary or permanent and whether Yellow Cab acted with discriminatory animus against employees over forty years of age. Accordingly, the district court did not err in denying Mr. Enlow's motion for partial summary judgment.

is deleted.

The following paragraph shall be inserted on slip op. 7632 [371 F.3d at 653] for the deleted text:

Viewed in the light most favorable to Yellow Cab, this evidence shows that it did not permanently terminate Mr. Enlow's employment because he was more than seventy years old. Instead, Yellow Cab's evidence shows that Mr. Enlow was temporarily discharged to avoid termination of Yellow Cab's business license while it negotiated with Star Insurance to waive the age exclusion provisions in its policy. As a demonstration of its intent to protect Mr. Enlow's employment rights, Yellow Cab successfully obtained temporary employment for him with another cab company. Yellow Cab also obtained Star Insurance's tentative agreement to waive the age-based exclusion of coverage if Mr. Enlow would submit to a physical examination. Mr. Enlow rejected Star Insurance's willingness to consider waiving its age exclusion provisions if he could pass a physical examination. He also declined Yellow Cab's offer to reemploy him. The evidence offered by Yellow Cab presents a genuine issue of material fact regarding whether it can demonstrate at trial that its employment decision "falls within one of the exceptions to the ADEA's prohibitions." *EEOC v. Santa Barbara*, 666 F.2d 373, 375 (9th Cir.1982) (citations omitted). The ADEA provides that "[i]t shall not be unlawful for an employer ... to take any action otherwise prohibited under ... this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the based on reasonable factors other than age...." 29 U.S.C. § 623(f)(1). "The validity of a BFOQ turns upon factual findings, preferably ones by a jury." *EEOC v. Boeing Company*, 843 F.2d 1213, 1216 (9th Cir.1988).

Whether a BFOQ or RFOA defense will sustain a judgment in favor of Yellow Cab will depend on the resolution of disputed factual issues which can only be resolved by a trier of fact regarding the employment action Yellow Cab actually took, such as, whether Mr. Enlow's discharge was temporary or permanent, was subject to a medical test, did he refuse an offer of reinstatement, was he laid off solely for the time necessary for Yellow Cab to obtain insurance coverage for him, and whether it was prohibitively expensive to insure drivers over seventy. We cannot decide on the sharply disputed facts in this record which version of the facts will be persuasive to a jury, and which party should prevail on appeal as a matter of law. Thus, we express no view at this interlocutory stage of these proceedings regarding the principles of law that will be applicable after the jury has made its findings and we have a complete record of the relevant facts. The district court did not err in denying Mr. Enlow's motion for partial summary judgment.

Delete the paragraphs beginning after "Conclusion" on slip op. 7632 [371 F.3d at 653] and slip op. 7633 [371 F.3d at 654] that read:

We conclude that Mr. Enlow presented sufficient direct evidence to support an inference that Yellow Cab's decision to terminate his employment was motivated by discriminatory animus. For that reason, the district court erred in granting Yellow Cab's motion for summary judgment on the ground that Mr. Enlow failed to present evidence that Yellow Cab acted with discriminatory animus.

We also hold that Yellow Cab presented sufficient evidence to demonstrate that its temporary discharge of Mr. Enlow was without discriminatory intent, and was solely to avoid losing its business license based on the fact that all of its employees were not covered by automobile liability insurance. Mr. Enlow failed to present any evidence that Yellow Cab acted pursuant to an explicit facially discriminatory company practice to fire taxi cab drivers who were over seventy years of age. Thus, the district court did not err in denying Mr. Enlow's partial motion for summary judgment. Because there are genuine issues of material fact in dispute, we reject Mr. Enlow's request that we instruct the district court to grant his motion for summary judgment.

The following two paragraphs shall be inserted on slip op. 7632 [371 F.3d at 653] and slip op. 7633 [371 F.3d at 654] and substituted for the deleted material.

We conclude that Mr. Enlow presented sufficient direct evidence to support an inference that Yellow Cab's decision to terminate his employment was based on the fact that he was more than seventy years of age. For that reason, the district court erred in granting Yellow Cab's motion for summary judgment on the ground that Mr. Enlow failed to present any evidence that Yellow Cab acted with discriminatory animus.

We also hold that Yellow Cab presented sufficient evidence to raise a genuine issue of disputed fact regarding whether Mr. Enlow was permanently discharged because of his age, or whether it has a viable BFOQ or a RFOA affirmative defense based on its evidence that a temporary discharge was necessary to avoid losing its business license because all of its employees were not covered by automobile liability insurance. The district court did not err in denying Mr. Enlow's partial motion for summary judgment. Because there are genuine issues of material fact in dispute, we reject Mr. Enlow's request that we in-

struct the district court to grant his motion for summary judgment.

With these amendments, Judge Alarcón and Judge Rawlinson have voted to deny the petition for rehearing. Judge Ferguson has voted to grant the petition for rehearing. Judge Rawlinson has voted to deny the petition for rehearing en banc. Judge Alarcón recommended that the petition for rehearing en banc be denied. Judge Ferguson recommended that the petition for rehearing en banc be granted.

The full court has been advised of the petition for rehearing en banc. No judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED.

## OPINION

ALARCÓN, Circuit Judge.

David Enlow appeals from the order denying his motion for partial summary judgment regarding his Age Discrimination in Employment Act ("ADEA") claim, and the order granting Salem–Keizer Yellow Cab Co.'s ("Yellow Cab") cross-motion for summary judgment. Mr. Enlow contends that he was entitled to summary judgment because he presented direct evidence that Yellow Cab permanently discharged him solely because of his age.

We affirm the denial of his motion because we conclude that Yellow Cab presented sufficient evidence to raise a genuine issue of material fact regarding whether, as asserted in its response to Enlow's motion for partial summary judgment, it terminated Mr. Enlow's employment *temporarily* based on a bona fide occupational qualification ("BFOQ") or because of reasonable factors other than age ("RFOA"). We reverse the order granting Yellow Cab's motion for summary judgment, however, because the district

erred in concluding that Mr. Enlow failed to present prima facie evidence that Yellow Cab acted with a discriminatory motive or intent.

We analyze the legal questions raised in this appeal separately. In Part One, we explain why we conclude that the district court erred in granting Yellow Cab's motion for summary judgment. In Part Two, we consider whether Yellow Cab presented sufficient evidence in response to Mr. Enlow's motion for partial summary judgment to raise a genuine issue of material fact requiring that the parties have their day in court to determine which party should prevail.

### Facts and Procedural Background

Sometime prior to June 24, 1999, a representative from the Bell Anderson insurance agency in Tacoma, Washington contacted Yellow Cab to see if it would be interested in a new insurance product that could save Yellow Cab a significant amount of money on its annual insurance premiums. After considering the quoted premium, Yellow Cab decided to accept the new policy. It is undisputed that Yellow Cab purchased the insurance policy from Meadowbrook Insurance Group because the cost of its new product, Star Insurance, was more than $10,000 less than the amount Yellow Cab had paid previously to the Reliance Insurance Co. ("Reliance Insurance"). At the time Yellow Cab accepted the Star Insurance offer, it had no knowledge that the policy excluded coverage of employees younger than twenty-three or older than seventy years of age.

In order to obtain a business license to operate a "[v]ehicle for hire," the City of Salem, Oregon requires that a taxi cab company carry automobile liability insurance that covers each person employed as a "[t]axicab driver." Salem Revised Code, Title 3, Ch. 34.002(I), (j), 34.010(d). Yellow

Cab's liability coverage under the Star Insurance policy was scheduled to take effect on June 25, 1999, the same date that its Reliance Insurance policy was due to expire. Yellow Cab paid $13,200 to Star Insurance, representing a 20% down payment on the new policy, and was scheduled to begin making monthly payments on that policy on July 1, 1999.

The City of Salem required Yellow Cab to inform it of the insurance it planned to use no later than June 25, 1999. Yellow Cab faced suspension of its business license on that date if it could not provide proof of insurance for each taxi cab driver in its employ.[1]

At 4:00 p.m. on June 24, 1999, a Star Insurance agent called Gary Anderson, Yellow Cab's Secretary/Treasurer, to inform him that its new policy did not cover employees younger than twenty-three or older than seventy years of age, and that Mr. Enlow was not eligible for insurance under the new policy because he was seventy-three years old. Prior to June 24, Yellow Cab had not received a copy of the Star Insurance policy, nor had it reviewed the Star Insurance policy's underwriting guidelines or restrictions.

After learning of the age limitation in the Star Insurance policy, Yellow Cab's personnel manager, Richard Haley, called Mr. Enlow into his office and discharged him. We discuss below the conflicting evidence presented by the parties regarding whether the termination of Mr. Enlow's employment was intended to be temporary or permanent, and whether Yellow Cab acted pursuant to a facially discriminatory employment practice to discharge employees over seventy years old.

Mr. Enlow filed a complaint in the district court on September 21, 2000 in which he alleged that Yellow Cab had violated the ADEA and Oregon Revised Statutes § 659.030(1)(a) (renumbered 659A.030(2)(a) in 2001), Oregon's parallel age discrimination statute. He prayed for front and back pay.

On May 18, 2001, Mr. Enlow filed a motion for partial summary judgment on this ADEA claim in which he argued that he had established "a prima facie case" of age discrimination under the ADEA by presenting evidence that he was seventy-three years old, had performed his job to his employer's satisfaction, and was discharged when his employer obtained less expensive automobile liability insurance that did not cover drivers over the age of seventy, while younger employees were retained. He maintained that he was entitled to prevail in the action because his age was the "but for" cause of his termination.

Yellow Cab filed a cross-motion for summary judgment on June 1, 2001 in which it argued that it was entitled to summary judgment because Mr. Enlow had not produced any evidence that Yellow Cab intended to discriminate against him based on his age. It stated: "For David Enlow to prevail, he must not only satisfy the prima facie requirements of an ADEA claim, but must produce evidence that Yellow Cab 'intended' to discriminate against him because of his age." Yellow Cab maintained that because Mr. Enlow failed to allege or produce evidence of discriminatory motive, he could not prevail under a

1. Salem Revised Code, Title 3, Ch. 30.124 requires as follows:
   Whenever any ... policy of insurance is required in connection with any license required by this title, the maintenance thereof in full force and effect shall be a condition of the validity of any license issued under this chapter. Upon receiving information that such ... insurance is, for any reason, no longer in full force and effect, the director shall summarily suspend such license.

disparate treatment theory of liability. Yellow Cab asserted that Mr. Enlow failed to present any evidence that Yellow Cab acted with discriminatory animus, or that its proffered reasons for terminating his employment were merely a pretext for impermissible discrimination.

The district court denied Mr. Enlow's partial motion for summary judgment and granted Yellow Cab's motion for summary judgment on November 26, 2001. The district court held that Mr. Enlow "failed to provide evidence of a discriminatory motive [on] the part of the Defendant in the decision to terminate Plaintiff." Mr. Enlow filed a timely notice of appeal of the order granting Yellow Cab's cross-motion for summary judgment, and the order denying his motion for partial summary judgment.[2]

## Part One

■ Mr. Enlow contends that the district court erred in granting Yellow Cab's motion for summary judgment. He maintains that he was not required to produce evidence that the proof relied upon by Yellow Cab to justify the termination of his employment was a pretext for impermissible discrimination in order to survive a motion for summary judgment. He argues that the familiar *McDonnell Douglas* burden-shifting analysis should not apply to this case because he presented direct evidence that Yellow Cab terminated his employment because of his age.

We review a district court's grant of summary judgment de novo. *Frank v. United Airlines, Inc.,* 216 F.3d 845, 849 (9th Cir.2000). We may affirm the district court's order granting summary judgment on any basis that is supported in the record. *San Jose Christian Coll. v. City*

*of Morgan Hill,* 360 F.3d 1024, 1030 (9th Cir.2004).

Under the ADEA, employers may not "fail or refuse to hire or ... discharge any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court identified two theories of employment discrimination: disparate treatment and disparate impact. *Id.* at 609, 113 S.Ct. 1701 (citing *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). In this appeal, Mr. Enlow relies solely on the disparate treatment theory of liability.

■ Disparate treatment is demonstrated when " '[t]he employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics].' " *Id.* (second alteration in original) (quoting *Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. 1843). More recently, the Court instructed that " 'liability [in a disparate treatment claim] depends on whether the protected trait (under the ADEA, age) *actually* motivated the employer's decision.' " *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (emphasis added) (quoting *Hazen,* 507 U.S. at 610, 113 S.Ct. 1701). The Court held that "the plaintiff's age must have' actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.' " *Id.* (alteration in original) (quoting *Hazen,* 507 U.S. at 610, 113 S.Ct. 1701).

**2.** On this appeal, Mr. Enlow has abandoned his state age discrimination claim. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1105 (9th Cir.1999) ("Issues appealed but not briefed are deemed abandoned.").

When a plaintiff alleges disparate treatment based on direct evidence in an ADEA claim, we do not apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in determining whether the evidence is sufficient to defeat a motion for summary judgment. In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court instructed that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Id.* at 121, 105 S.Ct. 613; *see also AARP v. Farmers Group, Inc.*, 943 F.2d 996, 1000 n. 7 (9th Cir.1991) (stating that "[o]rdinarily, however, when there is direct evidence of discrimination, such as when a provision[of a pension plan] is discriminatory on its face, the prima facie case analysis is inapplicable") Direct evidence, in the context of an ADEA claim, is defined as " 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the *fact finder* to infer that that attitude was more likely than not a motivating factor in the employer's decision.' " *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999) (alteration in original, emphasis added) (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993)).

The *McDonnell Douglas* formula applies under the ADEA where an employee must rely on *circumstantial* evidence that he or she was at least forty years old, met the requisite qualifications for the job, and was discharged while younger employees were retained. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. It "creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under *McDonnell Douglas*, if an employee presents prima facie circumstantial evidence of discrimination, the burden shifts to the employer to " 'produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (alteration in original) (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089). This burden-shifting scheme is designed to assure that the " 'plaintiff[has] his day in court despite the unavailability of direct evidence.' " *Trans World Airlines*, 469 U.S. at 121, 105 S.Ct. 613 (alteration in original) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979)).

In his opposition to the motion for summary judgment, Mr. Enlow presented direct evidence that Yellow Cab permanently terminated his employment because he was seventy-three years old and the new insurance policy did not cover employees over the age of seventy. In an affidavit filed in support of his motion for summary judgment, Mr. Enlow declared that "[a]t no time did the defendant offer me an unconditional offer of re-employment." He further, stated that "[m]y understanding at the time of my termination was that I was terminated and would no longer be working for the Defendant." Thus, Mr. Enlow carried his "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters*, 431 U.S. at 358, 97 S.Ct. 1843.

[W]hen a plaintiff has established a prima facie inference of disparate treatment through *direct* or circumstantial evidence, he will *necessarily* have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision.... When [the] ev-

idence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment.

*Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410(9th Cir.1996) (alterations in original, first emphasis added, internal quotation marks omitted) (quoting *Sischo–Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991)).

Yellow Cab presented evidence in opposition to Mr. Enlow's motion for partial summary judgment that the sole reason it *temporarily* terminated Mr. Enlow's employment was to prevent the City of Salem from closing its business doors because it lacked proof that each of its drivers was insured. In reviewing the district court's decision to grant Yellow Cab's motion for summary judgment, we must view the evidence in the light most favorable to Mr. Enlow. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1287 (9th Cir.2000).

The district court granted Yellow Cab's motion for summary judgment because it concluded that Mr. Enlow failed to produce evidence that Yellow Cab had a discriminatory motive for terminating Mr. Enlow's employment. In reaching this conclusion, the district court erroneously applied the *McDonnell Douglas* burden-shifting analysis. Mr. Enlow presented direct evidence that would support an inference that his employment was terminated because he was over the age of seventy. By granting summary judgment in favor of Yellow Cab, the district court denied Mr. Enlow his day in court " 'with respect to the legitimacy or bona fides of [Yellow Cab's] articulated reason for its employment decision.' " *Sischo–Nownejad,* 934

F.2d at 1111(quoting *Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985)).

## Part Two

Mr. Enlow also seeks reversal of the order denying his motion for partial summary judgment in his ADEA claim. He maintains that he is entitled to summary judgment without a trial because he has presented direct evidence that his employment was terminated because employees who are more than seventy years old are not covered under the Star Insurance policy. He requests that we instruct the district court to enter judgment in his favor.

It is undisputed that Yellow Cab did not purchase the Star Insurance policy in order to discriminate against employees younger than twenty-three and older than seventy years of age. In his supplemental brief to this court, Mr. Enlow concedes that Yellow Cab was not aware of the Star Insurance policy's discriminatory provision when it purchased it.

In reviewing the denial of Mr. Enlow's motion for partial summary judgment, we must view the evidence in the light most favorable to Yellow Cab. *Coleman,* 232 F.3d at 1287. In response to Mr. Enlow's motion, Yellow Cab offered evidence that Mr. Enlow's employment was not permanently terminated. Mr. Haley, Yellow Cab's personnel manager, declared in his affidavit that "the only reason why Mr. Enlow was terminated was because the company made a switch in auto insurance carriers and the new carrier did not insure drivers under twenty-three years of age or over the age of seventy. The saving in annual premium expense was the only reason why Yellow Cab switched insurance." He also alleged that "[a]t no time did Yellow Cab search for an insurance carrier who did not insure older workers in order to terminate Mr. Enlow's position with the company." Mr. Haley further stated that:

Mr. Enlow was ... a commissioned employee. He was paid a percentage of the fares he took in. All of his taxes and expenses were paid out of his share of the gross fares. Terminating Mr. Enlow did not have any direct economic benefit in that Yellow Cab did not experience a savings in unpaid salaries or benefits. Indeed, terminating a driver actually made Yellow Cab one more driver short.

Mr. Gary Anderson, Yellow Cab's Secretary/Treasurer, declared that Yellow Cab adopted the new Star Insurance policy without knowledge that it did not insure drivers over the age of seventy or under the age of twenty-three. He stated that Yellow Cab did not learn of the age limitation until 4:00 p.m., on the day before it was required to provide proof of insurance to the City of Salem or face the loss of its business license. Mr. Anderson declared that the possibility of renewing its old insurance policy "was no longer available" at the time Yellow Cab learned of the new policy's age limitation.

Yellow Cab also produced evidence that Mr. Haley had indicated to Mr. Enlow that the termination of his employment was only "temporary until coverage could be resolved or obtained." Immediately following Mr. Enlow's termination, Mr. Anderson made several phone calls on Mr. Enlow's behalf. Mr. Anderson declared: "I personally called Cherry City cab company in order to find Mr. Enlow work while we sorted out the insurance coverage problem." Mr. Anderson was successful in securing a job interview for Mr. Enlow with the Blue Jay Cab Company. Mr. Enlow was hired to begin work with the Blue Jay Cab Company within a week of the termination of his employment with Yellow Cab.

Finally, Yellow Cab introduced evidence that after it discharged Mr. Enlow, Mr. Anderson spoke with representatives at Star Insurance to see if they would waive the age restriction in their policy so that Mr. Enlow could be reemployed. Mr. Anderson declared: "I was able to talk the insurance carrier into considering Mr. Enlow for insurance if he would be willing to consider submitting to a medical checkup." Yellow Cab then presented Mr. Enlow with the option of taking a physical examination with the hope that Star Insurance would agree to insure Mr. Enlow on the basis of a clean bill of health. Mr. Anderson stated in his affidavit that "Mr. Enlow indicated that he would not agree to a physical and declined the offer to return to Yellow Cab." This evidence directly conflicts with Mr. Enlow's allegation that he was *permanently* terminated from his employment solely because of his age.

■ Viewed in the light most favorable to Yellow Cab, this evidence shows that it did not permanently terminate Mr. Enlow's employment because he was more than seventy years old. Instead, Yellow Cab's evidence shows that Mr. Enlow was temporarily discharged to avoid termination of Yellow Cab's business license while it negotiated with Star Insurance to waive the age exclusion provisions in its policy. As a demonstration of its intent to protect Mr. Enlow's employment rights, Yellow Cab successfully obtained temporary employment for him with another cab company. Yellow Cab also obtained Star Insurance's tentative agreement to waive the age-based exclusion of coverage if Mr. Enlow would submit to a physical examination. Mr. Enlow rejected Star Insurance's willingness to consider waiving its age exclusion provisions if he could pass a physical examination. He also declined Yellow Cab's offer to reemploy him. The evidence offered by Yellow Cab presents a genuine issue of material fact regarding whether it can demonstrate at trial that its

employment decision "falls within one of the exceptions to the ADEA's prohibitions." *EEOC v. Santa Barbara*, 666 F.2d 373, 375 (9th Cir.1982) (citations omitted). The ADEA provides that "[i]t shall not be unlawful for an employer ... to take any action otherwise prohibited under ... this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age...." 29 U.S.C. § 623(f)(1). "The validity of a BFOQ turns upon factual findings, preferably ones by a jury." *EEOC v. Boeing Company*, 843 F.2d 1213, 1216 (9th Cir.1988).

Whether a BFOQ or RFOA defense will sustain a judgment in favor of Yellow Cab will depend on the resolution of disputed factual issues which can only be resolved by a trier of fact regarding the employment action Yellow Cab actually took, such as, whether Mr. Enlow's discharge was temporary or permanent, was subject to a medical test, did he refuse an offer of reinstatement, was he laid off solely for the time necessary for Yellow Cab to obtain insurance coverage for him, and whether it was prohibitively expensive to insure drivers over seventy. We cannot decide on the sharply disputed facts in this record which version of the facts will be persuasive to a jury, and which party should prevail on appeal as a matter of law. Thus, we express no view at this interlocutory stage of these proceedings regarding the principles of law that will be applicable after the jury has made its findings and we have a complete record of the relevant facts. The district court did not err in denying Mr. Enlow's motion for partial summary judgment.

## Conclusion

We conclude that Mr. Enlow presented sufficient direct evidence to support an inference that Yellow Cab's decision to terminate his employment was based on the fact that he was more than seventy years of age. For that reason, the district court erred in granting Yellow Cab's motion for summary judgment on the ground that Mr. Enlow failed to present any evidence that Yellow Cab acted with discriminatory animus.

We also hold that Yellow Cab presented sufficient evidence to raise a genuine issue of disputed fact regarding whether Mr. Enlow was permanently discharged because of his age, or whether it has a viable BFOQ or a RFOA affirmative defense based on its evidence that a temporary discharge was necessary to avoid losing its business license because all of its employees were not covered by automobile liability insurance. The district court did not err in denying Mr. Enlow's partial motion for summary judgment. Because there are genuine issues of material fact in dispute, we reject Mr. Enlow's request that we instruct the district court to grant his motion for summary judgment.

We **VACATE** the order granting Yellow Cab's motion for summary judgment and **AFFIRM** the order denying Mr. Enlow's motion for partial summary judgment.

Each side shall bear its own costs.

FERGUSON, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's decision to vacate the grant of summary judgment in favor of defendant Salem–Keizer Yellow Cab. But I dissent from the majority's denial of summary judgment to plaintiff David Enlow. The majority have bought Yellow Cab's implosive position that when it purchased a new insurance policy that reduced its premium payments by more than $10,000 per year, it did not know the terms or conditions of the new policy or

why it was so much less expensive than its old policy. The Age Discrimination in Employment Act ("ADEA") does not protect an employer whose deliberate indifference toward its business policies leads it to terminate employees in violation of the ADEA.

Additionally, the majority have bought another implosive belief that the ADEA does not apply when an employee covered under the ADEA is discharged only temporarily for economic reasons. Temporary termination is not a defense under the ADEA; it qualifies under neither the bona-fide-occupational-qualification ("BFOQ") exception nor the reasonable-factor-other than-age ("RFOA") exception to the ADEA. Whether the termination was temporary or permanent will have an effect on the amount of damages eventually awarded but is not a factor in determining liability.

The uncontested facts establish a violation of the ADEA. Mr. Enlow, a 72–year–old cabdriver, was discharged from Yellow Cab because the company's new insurance policy did not cover drivers over 70. The majority remands this case to district court to determine whether Yellow Cab terminated Mr. Enlow temporarily on the basis of an ADEA exception. Yet it makes no difference regarding liability for discrimination whether the termination was permanent or temporary. The *only* question to be resolved is whether, as a matter of law, the ADEA is violated where an employer terminates a 72–year–old employee because the company's chosen insurance policy does not cover drivers over 70.

The answer to that question is without question. Where an employer intentionally uses age as a criterion for an employment decision, it is not a defense that the employer sought only to save costs. Nor can the employer escape liability by claiming that exigent circumstances excused its actions. The ADEA prohibited age discrimination while carefully enumerating several exceptions to the rule. *See* 29 U.S.C. § 623(f). None of these exceptions applies here. The majority's implicit creation of a new exception for age discrimination taken to reduce insurance costs dilutes the protections that Congress sought to provide for older workers.

## I.

Yellow Cab contends that Mr. Enlow did not establish the discriminatory intent required for an ADEA disparate treatment claim, as described by *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In that case, the Supreme Court held that an employer does not violate the ADEA by terminating an older employee in order to prevent his pension benefits from vesting, even if pension status is correlated with age. *Id.* at 611–12, 113 S.Ct. 1701. The Court reasoned that age and pension status are "analytically distinct" and noted that a younger employee who has worked for a particular employer his entire career might be closer to qualifying for pension benefits than an older employee newly hired. *Id.* at 611, 113 S.Ct. 1701.

Yellow Cab claims that here, too, it discharged Mr. Enlow based on a classification—insurability—that is analytically distinct from age. Unlike the situation in *Hazen,* however, there is not merely a correlation between age and qualification for insurance coverage, but absolute identification: Mr. Enlow did not qualify for Yellow Cab's new insurance policy *because* he was over 70, and as a result, the company fired him. The cab company acknowledged that but for Mr. Enlow's age, he would not have been discharged. Thus, Mr. Enlow meets *Hazen's* requirement that an employee show that age "actually

played a role in [the employer's decision-making] process and had a determinative influence on the outcome." 507 U.S. at 610, 113 S.Ct. 1701.

Yellow Cab's attempt to separate out insurability from age is unavailing. In *City of Los Angeles Dep't. of Water & Power v. Manhart,* the Supreme Court rejected the employer's argument that a plan requiring women to make larger monthly contributions to a pension plan than men was "based on the factor of longevity rather than sex." 435 U.S. 702, 712, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). The Court stated: "It is plain ... that any individual's life expectancy is based on a number of factors, of which sex is only one.... [O]ne cannot say that an actuarial distinction based entirely on sex is based on any other factor other than sex. Sex is exactly what it is based on." *Id.* at 712–13, 98 S.Ct. 1370(internal citations omitted). Here, too, an individual's insurance risk is based on numerous factors, but Mr. Enlow's inability to qualify for insurance coverage was based solely on age. The cab company cannot splice out insurability from age where, as in *Manhart,* the proffered basis for its employment practice coincides absolutely with a protected trait.

Nor can Yellow Cab escape liability by shifting blame to the insurance carrier that established the coverage limits. The Supreme Court held more than twenty years ago that an employer violated Title VII where the retirement plans offered to its employees provided lower monthly benefits to women, even though the discriminatory conditions were supplied by private insurers. *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983). The employer "cannot disclaim responsibility for the discriminatory features of the insurers' options" and violates Title VII "regardless of whether third parties are also involved in the discrimination." *Id.* at 1089, 103 S.Ct. 3492. Here, too, Yellow Cab is no less responsible for violating the ADEA because it did so in response to an insurance policy that it selected from a third party.

Furthermore, even assuming that the company was not motivated by stigmatizing stereotypes of older workers, Yellow Cab has violated the ADEA. *Hazen* explains that "[i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." 507 U.S. at 610, 113 S.Ct. 1701. Congress enacted the ADEA in order to address the concern that "older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Id. Hazen* further stated that where an employer's decision is *"wholly* motivated by factors other than age," the problem presented by such stereotyping "disappears." *Id.* at 611, 113 S.Ct. 1701(emphasis added).

This interpretation of the ADEA's rationale, however, does not shield Yellow Cab. The majority believes that to establish disparate treatment, Mr. Enlow must still persuade a trier of fact by a preponderance of the evidence that Yellow Cab's motive in terminating him was intentionally discriminatory. But precedent is clear that in a case of facial discrimination, the explicit use of a protected trait as a criterion for the employer's action establishes discriminatory intent, regardless of the employer's subjective motivations. "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Int'l Union, UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199, 111 S.Ct. 1196, 113

L.Ed.2d 158 (1991) (finding an employer's fetal-protection policy to be sex discrimination in violation of Title VII where it excluded women of child-bearing capacity from jobs exposing them to lead). There, the Supreme Court noted that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy...." *Id. See also Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir.2000) (reaffirming that "where a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender ... a plaintiff need not otherwise establish the presence of discriminatory intent").

This Court has applied the principle, first established in Title VII cases, that an employer's subjective motivations are not controlling in a case of facial discrimination to claims under the ADEA. In *EEOC v. Borden's, Inc.*, for example, we stated that where a severance policy denied a benefit to workers 55 and older, no showing of the employer's ill will toward older people was required.[1] 724 F.2d 1390, 1393 (9th Cir.1984), *overruled on other grounds in Pub. Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), *superseded by revision to* 29 U.S.C. §§ 621, 623.

Indeed, there is good reason to find discriminatory intent where an employer's decision or policy discriminates on its face: where differential treatment based on a protected trait is open and explicit, older workers are stigmatized on account of their age regardless of the employer's subjective motivations. Moreover, although there is no evidence that Yellow Cab itself

espoused stereotypes of older workers, by dismissing Mr. Enlow because of an insurance policy that did not cover drivers over 70, Yellow Cab ratified the insurance company's categorical judgment that drivers over 70 were not competent.

Whatever the rights of the insurance business to set coverage limits as it deems appropriate, Yellow Cab's termination of an older employee based on the new policy's age exclusion implicated the stigmatizing stereotypes to which *Hazen* refers. Mr. Enlow's dismissal falls squarely within the range of discriminatory employment actions that the ADEA sought to prevent.

## II.

Although Mr. Enlow's dismissal constitutes facial discrimination under the ADEA, the majority believes that Yellow Cab's decision to terminate Mr. Enlow potentially falls within an established ADEA exception. In particular, the majority suggests that Yellow Cab qualifies for a BFOQ or a RFOA exception to the ADEA, both of which insulate a defendant from liability for discrimination. The majority, however, misconstrues both ADEA exceptions: discharging an employee, even if only temporarily, to save costs never justifies age-based discrimination under any exception.

### A. *Bona Fide Occupational Qualification ("BFOQ") Exception*

As a preliminary matter, the affirmative BFOQ defense set forth in § 4(f)(1) of the ADEA is inapplicable in this case because Yellow Cab failed to raise it in its motion

---

1. *Borden's* held that a policy that denied severance pay only to employees who were eligible for retirement constituted disparate treatment. 724 F.2d at 1393. While that holding may not survive *Hazen*, the *Borden's* analysis of the intent required in facial discrimination cases is still apt. Moreover, in a case decided

after *Hazen*, the Third Circuit found a separate inquiry into an employer's subjective motivations unnecessary in a case of facial age discrimination. *See DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 726 (3d Cir. 1995).

for summary judgment. The Supreme Court has repeatedly described the BFOQ defense as an affirmative defense, *Johnson Controls, Inc.*, 499 U.S. at 206, 111 S.Ct. 1196, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 112, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), which the Federal Rules of Civil Procedure requires to be specifically pleaded. Fed.R.Civ.P. 8(c). Failure to plead an affirmative defense therefore results in a waiver of that defense. *See Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir.1991). Since Yellow Cab did not specifically plead the BFOQ defense in its motion for summary judgment, Yellow Cab effectively waived this defense.

More importantly, even if Yellow Cab were permitted to raise the BFOQ defense in district court, the defense would nonetheless fail as a matter of law. The majority believes that to establish a BFOQ defense, Yellow Cab need only prove that it terminated Mr. Enlow temporarily and not in bad faith. The majority repeatedly states that according to Yellow Cab, the termination of Mr. Enlow was to be temporary. The opinion does not explain, however, why this would make a difference. The ADEA prohibits age discrimination "with respect to ... compensation, terms, conditions, or privileges of employment ...". 29 U.S.C. § 623(a)(1). It does not only prohibit "permanent" termination. Thus, although this fact is contested, it is not a *material* fact requiring us to remand the case.

The Supreme Court has established that the BFOQ defense is a narrow exception to the ADEA that only applies in special situations. *See Johnson Controls, Inc.*, 499 U.S. at 201, 111 S.Ct. 1196; *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 412, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); *Dothard v. Rawlinson*, 433 U.S. 321, 334, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). In particular, the BFOQ defense applies only in situations where an employer who discriminates on the basis of age demonstrates that "age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). Thus, one of the elements that a defendant invoking the BFOQ defense must satisfy is that its age-based discrimination relates to a "particular business," which the Supreme Court defined in *Thurston* as the particular job from which the protected individual is excluded. 469 U.S. at 122, 105 S.Ct. 613.

In *Thurston*, more specifically, the Supreme Court held that Trans World Airlines' ("TWA's") discriminatory transfer policy was not permissible under § 4(f)(1) because age is not a BFOQ for the "particular" position of flight engineer. *Id.* The transfer policy explicitly allowed airplane captains displaced for reasons other than age to "bump" less senior flight engineers. *Id.* Those captains disqualified from their position after reaching the age of 60, however, were denied the transfer privilege altogether because of their age. *Id.* The Court determined that a BFOQ defense was meritless because age is not a BFOQ for the position of flight engineer. *Id.* at 123, 105 S.Ct. 613. TWA had actually employed at least 148 flight engineers who were over 60 years old, thereby defeating the contention that captains over 60 years old were too old or incapable of performing as flight engineers. *Id.* n. 18.

Here, too, Yellow Cab's discriminatory insurance policy is not permissible under § 4(f)(1) because age is not a BFOQ for the particular position of cab driver. Yellow Cab's own pleadings acknowledge that Mr. Enlow, a nineteen-year employee of the company, maintained a solid job performance. In addition, Yellow Cab's supplemental brief to this Court reiterated that the cab company did not consider Mr.

Enlow to be an unsafe driver. Accordingly, Mr. Enlow's age did not affect his ability to carry out his duties for Yellow Cab; he was neither incapable of performing his job, *see Johnson Controls,* 499 U.S. at 201, 111 S.Ct. 1196 (explaining that an age-based BFOQ defense must relate to the employee's occupation, including his *ability* to do the job) (emphasis added), nor a potential safety risk, *see Criswell,* 472 U.S. at 419, 105 S.Ct. 2743 (finding that an age-based BFOQ purportedly justified by safety interests must be "reasonably necessary" to the overriding interest in public safety). Thus, Mr. Enlow's dismissal, despite his continued ability, violated the "particular business" requirement of the BFOQ defense.

Furthermore, we have refused to consider economic costs as a basis for a BFOQ defense. The majority opinion recites at length Yellow Cab's claim that it laid off Mr. Enlow solely for the time necessary for Yellow Cab both to avoid termination of its business license and to negotiate with Star Insurance to waive the age exclusion provisions in its policy. In *EEOC v. County of Los Angeles,* 706 F.2d 1039, 1042 (9th Cir.1983), however, we stated that "[e]conomic considerations ... [could not] be the basis for a BFOQ—precisely those considerations were among the targets of the Act." [2] As a result, it is irrelevant whether Yellow Cab terminated Mr. Enlow temporarily or because it failed to exercise rational business judgment in purchasing an insurance policy the terms and conditions of which it did not know.

In an effort to save costs, Yellow Cab ultimately adopted a new insurance policy that did not cover drivers over 70, and, consequently, discriminated against Mr. Enlow. Even though Yellow Cab's previous insurance policy covered drivers over 70, Yellow Cab nonetheless chose a new policy that effectively saved the company $10,000 in annual insurance premiums. But Yellow Cab made this business decision at Mr. Enlow's discriminatory expense. An employer's deliberate indifference toward a new discriminatory policy it chooses to adopt is therefore no excuse for age discrimination.

B. *Reasonable Factors Other than Age ("RFOA") Exception*

Although Yellow Cab invoked, and both parties addressed, the affirmative RFOA defense in their motions for summary judgment, the defense fails as a matter of law as well. Yellow Cab asserted below that its employment decision fell within the ADEA exception for actions taken "where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Here, however, Yellow Cab differentiated Mr. Enlow from other drivers precisely and only because of his age—making the defense inapplicable. *See EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1541 (2d Cir.1996) ("By its terms, the statute supplies an exception for 'age-neutral' decisions based on other factors such as health or even education that might be correlated with age ... not an exception for policies that explicitly but reasonably discriminate based on age."). Moreover,

---

**2.** Other circuits agree that economic considerations, unlike job-related safety concerns, are not a basis for the BFOQ defense. *See Leftwich v. Harris–Stowe State Coll.,* 702 F.2d 686, 692 (8th Cir.1983) (stating that "economic savings derived from discharging older employees cannot serve as legitimate justification under the ADEA for an employment se-

lection criterion"); *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303, 307 (4th Cir.1981) (holding that the economic burdens involved in hiring older pilots was not grounds for a BFOQ exception that justified United Airlines' age-based discrimination policy against hiring older pilots).

the Equal Employment Opportunity Commission ("EEOC") regulations interpreting the ADEA state that the "reasonable factors other than age" defense is unavailable where an "employment practice uses age as a limiting criterion...." 29 C.F.R. § 1625.7(c).

The EEOC regulations also provide that a "differentiation based on the average cost of employing older [workers] ..." does not qualify under this exception. 29 C.F.R. § 1625.7(f). Citing that regulation, the Eleventh Circuit rejected a cost-savings defense in a case with almost identical facts as the case before us. In *Tullis v. Lear Sch., Inc.*, 874 F.2d 1489 (11th Cir. 1989), a private school fired a 66–year–old bus driver because its insurance carrier only covered drivers 65 or younger. The Eleventh Circuit ruled that the school's decision to dismiss the driver was based on his age, *id.* at 1490–91, and that the increased insurance cost for the school did not exempt it from complying with the ADEA. *Id.* at 1490.

### III.

Mr. Enlow's claim of age discrimination should be granted on summary judgment. There are no material facts for a trier of fact to determine. As a matter of law, the termination of an employee because he is older than the age limitation of his employer's insurance policy violates the ADEA, even if the employer chose that policy to save money. Had Yellow Cab terminated a female employee because its insurance policy did not cover women, or discharged an Asian employee because its insurance excluded Asians, we would surely have repudiated those actions. As certainly, Yellow Cab's decision to terminate a 72–year–old cabdriver because its new insurance excluded drivers over 70 deserves our censure. Anti-discrimination law would mean nothing if an employer could justify a fa-

cially discriminatory action by invoking the bottom line of its profit and loss statement.