Alexander M. HILL, an individual,
Plaintiff,

v.

THE BOEING COMPANY, Rawlings Mechanical Corp., and Does 1 through 50, inclusive, Defendants.

No. CV 10–02603 SJO (CWx).

United States District Court,
C.D. California.

Feb. 10, 2011.

Alexander M. Hill, Agua Dulce, CA, pro se.

Daniel F. Fears, Matthew J. Cute, Payne & Fears LLP, Irvine, CA, Andrew J. Marton, Bradford T. Child, Laura Michele Kelly, Marie Polizzi Holweger, Millard Holweger Child & Marton, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [Docket Nos. 14, 20]

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants Rawlings Mechanical Corporation ("Rawlings") and The Boeing Company's ("Boeing") (collectively, "Defendants") separate Motions for Summary Judgment, filed on November 16, 2010 and November 22, 2010, respectively. (Docket Nos. 14, 20.) Plaintiff Alexander M. Hill ("Plaintiff"), appearing *in propria persona,* submitted late Oppositions to the Motions for Summary Judgment on December 13, 2010.[1] (Docket Nos. 24, 29.) Plaintiff also submitted a "Response to Rawlings' Statement of Uncontroverted Facts" on the same date, which the Court deems as Evidentiary Objections. Rawlings filed a Reply to Plaintiff's Opposition on January 28, 2011. (Docket No. 31.)[2] Rawlings also lodged Evidentiary Objections to Plaintiff's Declaration in Support of His Opposition.[3] (Docket No. 22.) Boeing chose not to file a Reply.[4] The Court found these matters suitable for disposition without oral argument and vacated the hearings set for December 20, 2010. *See* Fed.R.Civ.P. 78(b). For the following reasons, Defen-

---

1. Pursuant to Local Rule 7–9, Plaintiff was required to file his Oppositions no later than 21 days before the hearing set for December 20, 2010. L.R. 7–9. Local Rule 7–12 permits the Court to construe "[t]he failure to file any required paper, or the failure to file it within the deadline ... [as] consent for the granting or denial of the motion." L.R. 7–12. In consideration of the fact that Plaintiff appears *in propria persona* and for judicial economy, the Court exercises its discretion under Local Rule 7–12 and considers Plaintiff's late Oppositions.

2. Rawlings served its Reply to Plaintiff on December 13, 2010, and submitted a courtesy copy to the Court on the same date. Rawlings, however, did not properly file the Reply until January 28, 2011.

3. The Court OVERRULES each and every one of Rawlings' Evidentiary Objections. The Court considers every statement made by Plaintiff in his Declaration in Support of His Opposition, whether consistent or not. The Court also construes all inferences from Plaintiff's declaration in a light most favorable to him.

4. Pursuant to Local Rule 7–10, "[a] moving party *may* ... serve and file a reply...." L.R. 7–10 (emphasis added).

dants' Motions for Summary Judgment are GRANTED.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was employed as a plumber by Boeing at the Santa Susana Field Laboratory in Chatsworth, California (the "Plant"), from approximately 1998 until April 2, 2009. (Compl. ¶¶ 2, 9; Decl. of Marie P. Holweger in Supp. of Rawlings' Mot. for Summ. J. ("MSJ") Ex. J ("Hill Dep.") 10:15–23.) Throughout his employment, Plaintiff was an active member of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America Union, Local 1519 (the "Union"). (Compl. ¶ 2.) Plaintiff's employment was governed by the collective bargaining agreement titled "Master Agreement Between the Boeing Company and the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW)" ("CBA Agreement"). (*Id.* ¶ 6; Decl. of Daniel F. Fears in Supp. of Boeing's MSJ ("Fears Decl.") Ex. B ("CBA Agreement").) Plaintiff alleges that, pursuant to the CBA Agreement, he was contracted to work from October 15, 2007 through October 14, 2010, to prepare the Plant for closure. (Compl. ¶ 6.)

Since the 1940s, the Plant has been used for large rocket engine research, assembly, and testing, and for nuclear energy research and development. (Decl. of Joyce Kucinskas in Supp. of Boeing's MSJ ("Kucinskas Decl.") ¶ 3.) Boeing, a major aerospace and defense corporation, acquired the Plant in 1996, when it merged with another corporation. (*See id.* ¶ 4.) By Au-gust 2005, Boeing had either moved most of its business operations at the Plant to other facilities or sold them. (*Id.* ¶¶ 5, 6.) Boeing, however, maintained employees on the Plant for the purpose of closing it down. (*Id.* ¶ 6.) In 2008, Boeing decided to close the Plant and approached representatives from the Union to negotiate lay-offs of the remaining employees at the Plant. (*Id.* ¶¶ 7, 8.) On January 27, 2009, Boeing and the Union entered into a Letter of Agreement that resolved all matters under the CBA Agreement pertaining to the Plant's closure. (*Id.* ¶ 10.) The Letter of Agreement provided that employees, who were members of the Union, were to be laid off on April 2, 2009. (*Id.*) The unionized employees, however, were to receive severance packages, including up to 13 weeks of severance pay. (*Id.*) The Letter of Agreement preserved Boeing's right to contract or subcontract out any or all of the operations for the Plant. (Fears Decl. Ex. C ("Letter of Agreement") 1.) Prior to the termination, Boeing requested that all the employees sign a Settlement and Release Agreement ("Release Agreement"). (Decl. of Alexander M. Hill ("Hill Decl.") in Opp'n to Rawlings' MSJ ¶ 6.) Plaintiff did not sign the Release Agreement. (*Id.*) On April 2, 2009, Boeing terminated Plaintiff's employment pursuant to the Letter of Agreement. (Compl. ¶ 9; Kucinskas Decl. ¶ 12.)

In or about February 2009, Boeing contractually hired Rawlings to provide support in operations at the Plant.[5] (Decl. of Rex Horney III in Supp. of Rawlings' MSJ ("Horney Decl.") ¶ 3.) Rex Horney, Vice President of Rawlings, submitted a declaration that Rawlings wanted to hire one Boeing employee. (Horney Decl. ¶ 4.)

---

**5.** Plaintiff contends that "Boeing wanted Rawlings ... to take over the [CBA Agreement]." (Decl. Hill in Opp'n to Rawlings' MSJ ¶ 5.) This allegation, however, is squarely contradicted by the Letter of Agreement, in which Boeing and the Union agreed that all issues under the CBA Agreement were fully resolved. (Letter of Agreement 1.) The Letter of Agreement makes no mention of Rawlings assuming the obligations of the CBA Agreement. (*See generally* Letter of Agreement.)

Horney's understanding was that Del Aubuchon ("Aubuchon"), Boeing's Plant Manager, would notify Boeing workers of the position. (*Id.* ¶ 5.) Plaintiff disputes this testimony and believes that Boeing made the hiring of Patton Montoya ("Montoya"), a Journeyman Carpenter and Team Leader of facilities for Boeing, a conditional precedent to Rawlings getting the contract. (Hill Dep. 84:5–10 (Rawlings will "hire that chimpanzee over there, it's no problem, because [Rawlings] wants the contract....").) Montoya is 48 years old. (Compl. ¶ 15.) Both parties, however, do not disagree that Aubuchon asked Plaintiff if he was interested in doing plumbing work for Rawlings. (Hill Dep. 73:8–10.) Plaintiff expressed interest in taking the position to Aubuchon, who then allegedly explained that Rawlings decided to hire one of its own employees for the position and that Plaintiff would not be considered because he did not sign the Release Agreement.[6] (Hill Decl. in Opp'n to Rawlings' MSJ ¶ 9; Opp'n to Rawlings' MSJ 4:1–3.)

Montoya contacted Horney on April 1, 2009 and applied for the plumbing position. (Decl. of Patton Montoya in Supp. of Rawlings' MSJ ("Montoya Decl.") ¶ 3.)[7] Rawlings hired Montoya on April 2, 2009. (Horney Decl. ¶ 6.) Plaintiff discovered that Montoya was hired by Rawlings on May 11, 2009. (Hill Dep. 77:4–12.) Plaintiff called Rawlings the same day. (*Id.* at 77:16.) Prior to that telephone call, Plaintiff had no contact with Rawlings. (*Id.* at 76:19–20.) Plaintiff applied for the position (Compl. ¶ 14),[8] but was turned down

6. Plaintiff provides inconsistent testimony. In a deposition, Plaintiff testified under oath that Aubuchon stated, "You will be contacted if [Rawlings] decide[s] to give you the job and not use one of their own plumbers." (Hill Dep. 73:18–20.) In a separate declaration and in his Opposition to Rawlings' Motion for Summary Judgment, Plaintiff argues that Aubuchon told him "in no uncertain terms ... that [he] would not be considered because [he] did not sign the release." (Hill Decl. in Opp'n to Rawlings' MSJ ¶ 9; Opp'n to Rawlings' MSJ 4:1–3.) In one version of Plaintiff's story, Rawlings considered him for the position; in another version, he was completely out of the running. The Ninth Circuit allows the district court to disregard a declaration when it is obvious, as is here, that a plaintiff attempts to manufacture a triable issue of material fact. *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985), *overruled on other grounds by Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir.1991).

7. Plaintiff submitted a "Response to Rawlings' Statement of Uncontroverted Facts," which the Court deems as Evidentiary Objections to the Declarations of Horney and Montoya. The Court OVERRULES Plaintiff's Evidentiary Objection Numbers Five, Six, Seven, Nine, Ten, and Eleven. Plaintiff objects on the ground that the declarants lack personal knowledge, pursuant to Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602. Plaintiff does not understand that " '[p]ersonal knowledge' means knowledge of a fact perceived by the senses, by one who has had an opportunity to observe, and must have actually observed the fact." *Tilei v. Wan,* No. 1:06–CV–00776, 2011 WL 121552, at *6 (E.D.Cal. Jan. 13, 2011) (citing Fed.R.Evid. 602). "Personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." *Id.* Therefore, Montoya can testify that he applied for the position and Horney can testify that Rawlings wanted to hire one Boeing employee and that Montoya applied for that position. Plaintiff's Evidentiary Objection Numbers Eight, Twelve, Thirteen, and Fourteen are OVERRULED because Plaintiff's statements are party admissions, and therefore, do not constitute hearsay. *See* Fed.R.Evid. 801(d)(2). Plaintiff's Evidentiary Objection Numbers Two and Four, however, are SUSTAINED because Horney cannot offer statements by Aubuchon to prove the truth of the matter asserted. *See* Fed.R.Evid. 802. Aubuchon's statements are hearsay and may not be considered on summary judgment. *Orr v. Bank of Am.,* 285 F.3d 764, 773–74 (9th Cir.2002) (concluding that exhibits were inadmissible due to hearsay).

8. This factual allegation causes the Court to conclude that *Plaintiff is attempting to manu-*

because there was no open position (Horney Decl. ¶ 7). Plaintiff alleges, and Rawlings does not dispute, that Rawlings made no efforts to interview any other applicant than Montoya and did not utilize a selection process in hiring for the position. (Opp'n to Rawlings' MSJ 4:7–9; *see generally* Rawlings' Reply.) Rawlings contends that Montoya was the only Boeing employee to timely apply for the one available position, and therefore, he was hired. (Horney Decl. ¶ 11.)

On February 18, 2010, Hill filed suit against Boeing and Rawlings in state court, alleging a breach of contract claim against Boeing and an Age Discrimination in Employment Act ("ADEA") claim against Rawlings. (*See generally* Compl.) On March 10, 2010 and March 11, 2010, Plaintiff served Rawlings and Boeing with the Complaint, respectively. (Notice of Removal 3–4.) On April 5, 2010, Defendants removed the case. (Docket No. 1.)

## II. *LEGAL STANDARD*

### A. *Summary Adjudication*

Federal Rule of Civil Procedure ("Rule") 56(c) mandates that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To meet its burden, the moving party does not need to produce any evidence or prove the absence

of a genuine issue of material fact. *See id.* at 325, 106 S.Ct. 2548. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party meets its initial burden, Rule 56(e) shifts the burden to the nonmoving party and requires it to "set out specific facts showing a genuine issue for trial" beyond those alleged in its pleading. Fed.R.Civ.P. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). Further, "[o]nly disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (citation omitted). For a summary judgment motion, a court does not make credibility determinations or weigh conflicting evidence. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

---

facture a triable issue of material fact. If Aubuchon had indeed told Plaintiff that he would not be considered for the position because he did not sign the Release Agreement,

then it would be nonsensical for Plaintiff to apply for the position on May 11, 2009. (*See* Hill Decl. in Opp'n to Rawlings' MSJ ¶ 9; Opp'n to Rawlings' MSJ 4:1–3.)

## III. DISCUSSION

### A. Defendant Boeing's Motion for Summary Judgment Is Granted Because Plaintiff's Breach of Contract Claim Is Preempted by Section 301 of the LMRA.

■ Defendant Boeing asserts that Plaintiff's breach of contract claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Boeing's MSJ 7:6–8:8.) Plaintiff does not address whether his state law claim is preempted. (*See generally* Opp'n to Boeing's MSJ.)

Pursuant to § 301 of the LMRA, "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States...." 29 U.S.C. § 185(a). The Supreme Court has long held that "in enacting [§ ] 301[,] Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The high court reasoned that "the possibility of conflicting substantive interpretation under competing legal systems would ... stimulate and prolong disputes ... [and] might substantially impede the parties' willingness to agree to contract terms...." *Id.* This would "frustrate[ ] the effort of Congress to ... [promote industrial peace, and] thus strike[ ] at the very core of federal labor policy." *Id.*

Thus, in *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. at 103–04, 82 S.Ct. 571, the Supreme Court held "that a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (reiterating the holding of *Lucas Flour*); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of a collective bargaining agreement.' ") (citation omitted and edits in original). Subsequently, the Supreme Court expanded the preemptive force of § 301 to cover claims whose resolution "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract...." *Lueck*, 471 U.S. at 220, 105 S.Ct. 1904 (holding that a state law tort of "bad faith" was based on breach of duties contained in the CBA, and was thus preempted). State law claims preempted by § 301 "must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." *Id.* (internal citation omitted). Though powerful, § 301 does not preempt "a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer." *Livadas v. Bradshaw*, 512 U.S. 107, 125, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted ... does not require the claim to be extinguished...." *Id.* at 124, 114 S.Ct. 2068 (internal citation omitted).

Plaintiff's breach of contract claim is preempted by § 301 of the LMRA. Plaintiff alleges that Boeing violated the CBA Agreement by terminating his employment "without good cause and in an effort to replace union members with independent contractors." (Compl. ¶ 9.) The resolution of Plaintiff's claim is directly dependent upon analysis of the terms of the CBA Agreement. The CBA Agreement permits Boeing to "discharge and discipline employees for justifiable reason." (CBA Agreement 29.) The Court would have to

analyze the meaning of "justifiable reason" to determine whether Plaintiff's employment was terminated without good cause. Plaintiff's claim also implicates the provision in the CBA Agreement that states it "shall remain in full force and effect to and including the 14th day of October, 2010...." (*Id.* at 30.) Moreover, the Court would have to determine the terms and conditions of the Letter of Agreement to decide whether all issues under the CBA Agreement, including Plaintiff's employment, were fully resolved. (*See* Letter of Agreement 1.)

Pursuant to settled Supreme Court precedent, Plaintiff's breach of contract claim is preempted by § 301. Accordingly, Boeing's Motion for Summary Judgment is GRANTED.

## B. *Defendant Rawlings' Motion for Summary Judgment Is Granted.*

### 1. *Legal Standard*

The ADEA prohibits an employer "to fail or refuse to hire ... any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). "Discrimination can be established in either of two ways-by direct evidence, or by indirect evidence." *Cozzi v. County of Marin*, No. C08-3633, 2010 WL 1532359, at *4 (N.D.Cal. Apr. 16, 2010) (citations omitted). "Direct evidence, in the context of an ADEA claim, is defined as 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude....'" *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir.2004) (citation omitted). "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir.2005). "The distinction between direct and circumstantial evidence is crucial, because it controls the amount of evidence that the plaintiff must present in order to defeat the employer's motion for summary judgment." *Id.* A plaintiff need only offer "'very little' direct evidence to raise a genuine issue of material fact." *Id.* (citation omitted). When a plaintiff relies on circumstantial evidence, however, that evidence must be "specific and substantial" to defeat the employer's motion for summary judgment. *Id.* at 1095-96 (citations omitted).

The Ninth Circuit "evaluate[s] ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir.2008) (citation omitted). Under the *McDonnell Douglas* framework set forth by the Supreme Court, "the [plaintiff] must first establish a prima facie case of age discrimination." *Id.* (citation omitted). A plaintiff may prove a prima facie case by showing that: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected." *EEOC v. Timeless Invs., Inc.*, 734 F.Supp.2d 1035, 1062 (E.D.Cal. 2010) (citations omitted); *see also Coghlan*, 413 F.3d at 1094. If the plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employer's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "If the employer satisfies its burden, the [plaintiff] must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimi-

nation." *Diaz,* 521 F.3d at 1207 (citation omitted).

### 2. The McDonnell Douglas Framework Is Applicable to the Instant Case.

■ Plaintiff has not put forth any direct evidence of age discrimination. He relies on circumstantial evidence of age discrimination, namely that "Rawlings had access to a document which references the . . . age for each of the . . . [Boeing] employees laid off on April 2, 2009." (Opp'n to Rawlings' MSJ 4:15–16.) Plaintiff also alleges that Horney believed Plaintiff was not interested in the position and "had retired" based on Aubuchon's representation. (*Id.* at 5:1–2.)

Despite Ninth Circuit precedent, Rawlings argues that the framework in *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817, is inapplicable to the case at hand. (*See* Rawlings' MSJ 7:25–27; Rawlings' Reply 9:20–21.) Rawlings seemingly misconstrues the Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.,* —— U.S. ——, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009), as a complete rejection of the *McDonnell Douglas* framework. In *Gross,* the Supreme Court clarified that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Id.* The Supreme Court concluded that "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* While the Supreme Court may have rejected burden-

shifting, the high court expressly stated that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." *Gross,* 129 S.Ct. at 2349 n. 2 (citations omitted).

The Ninth Circuit has not had the opportunity to decide whether the Supreme Court in *Gross,* 129 S.Ct. at 2352, abrogated the framework in *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817.[9] Contrary to Rawlings' assertion, the overwhelming number of other Courts of Appeals, who have addressed the issue, have held that *Gross* does not preclude the applicability of the *McDonnell Douglas* framework to ADEA claims. *See, e.g., Velez v. Thermo King de Puerto Rico, Inc.,* 585 F.3d 441, 447 n. 2 (1st Cir.2009) ("This circuit, however, has long applied the *McDonnell Douglas* framework to ADEA cases . . . . [and] [u]ntil told otherwise by the Supreme Court, we shall continue to do so.") (internal citations omitted); *Smith v. City of Allentown,* 589 F.3d 684, 691 (3d Cir.2009) ("While we recognize that *Gross* expressed significant doubt about any burden-shifting under the ADEA, we conclude that the but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases."); *Geiger v. Tower Auto.,* 579 F.3d 614, 622 (6th Cir.2009) ("[W]e find that the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence."); *Gorzynski v. Jetblue Airways Corp.,* 596 F.3d 93, 106 (2d Cir.2010) ("[W]e remain bound by, and indeed see no reason to jettison, the bur-

---

**9.** The Court notes, however, that the Ninth Circuit has applied the evidentiary framework in *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817, in a number of unpublished opinions even while recognizing *Gross,* 129 S.Ct. at 2352. *See, e.g., EEOC v. Banner Health,*

Nos. 09–16019, 09–16769, 2010 WL 4324409, at *1 (9th Cir. Nov. 2, 2010) (unpublished); *Smith v. Centex Homes Realty Co.,* 357 Fed. Appx. 751, 751–52 (9th Cir.2009) (unpublished).

denshifting framework for ADEA cases that has been consistently employed in our Circuit.") (citations omitted); *Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir.2010) ("Although we recognize that *Gross* created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of *McDonnell Douglas* to ADEA claims.") (citation omitted). District courts in the Ninth Circuit have also continued to apply the *McDonnell Douglas* framework. *See, e.g., Cozzi*, 2010 WL 1532359, at *4; *Arviso v. L.J. Leasing, Inc.*, No. CV–09–01102, 2010 WL 4922708, at *4 (D.Ariz. Nov. 29, 2010) ("Thus, *Gross* does not foreclose the application of the *McDonnell Douglas* framework to ADEA cases.") (citation omitted).

Accordingly, the Court finds that the *McDonnell Douglas* framework is applicable to the case at hand. The Court must abide by Ninth Circuit precedent applying the *McDonnell Douglas* framework to ADEA cases unless, and until, the Ninth Circuit or the Supreme Court mandates otherwise.

### 3. *Plaintiff Cannot Prove a Prima Facie Case of Age Discrimination.*

▮ As aforementioned, Plaintiff may prove a prima facie case by showing that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was not hired for the position; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected. *Timeless Invs., Inc.*, 734 F.Supp.2d at 1062. The "requisite degree of proof necessary to establish a *prima facie* case for ... ADEA claims on summary judgment is minimal

and does not even need to rise to the level of a preponderance of the evidence." *Coghlan*, 413 F.3d at 1094 (citations omitted and italics in original).

The undisputed facts of the case present an insurmountable barrier for Plaintiff to prove a prima facie case of age discrimination. At the time of the alleged incident, Plaintiff was 66 years old. (Compl. ¶ 15.) He was also qualified for the plumbing position, having held the position of a "Plumber–Pipefitting Operator" for approximately 20 years. (Hill Decl. in Opp'n to Rawlings' MSJ ¶¶ 20, 30.) Plaintiff, however, cannot show that he was rejected for the plumbing position or that a younger applicant was selected instead of him. Plaintiff did not apply for the plumbing position until the position had been filled by Montoya. (Opp'n to Rawlings' MSJ 4:19–22; Hill Dep. 77:6–21.) By the time Plaintiff contacted Rawlings on May 11, 2009, to inquire about the position, Montoya had been employed for about a month. (*See* Montoya Decl. ¶ 3; Horney Decl. ¶ 6.) Plaintiff cannot be rejected for a position that he never actually applied to or for a position that does not exist, and therefore, Rawlings could not have selected Montoya because he was younger than Plaintiff.

Plaintiff, appearing *in propria persona*, does not raise the argument that he effectively applied for the plumbing position by expressing interest in working for Rawlings to Aubuchon on or about April 2, 2009.[10] (*See generally* Opp'n to Rawlings' MSJ.) Plaintiff could make a prima facie case of age discrimination if he were able to show that Rawlings received notice of Plaintiff's interest in the plumbing position, along with those of other Boeing em-

---

**10.** Plaintiff seems to allege conflicting dates regarding his meeting with Aubuchon. In his Opposition to Rawlings' Motion for Summary Judgment, Plaintiff alleges that he met with Aubuchon "[j]ust prior to being laid off from

Boeing on April 2, 2009...." (Opp'n to Rawlings' MSJ 3:25.) In his deposition, however, Plaintiff seemingly alleges that he and Aubuchon met on or about February 24, 2009. (Hill Dep. 72:18–73:17.)

ployees, but then offered Montoya the position or asked only Montoya to formally apply. Indeed, Plaintiff alleges that Aubuchon stated, "You will be contacted if [Rawlings] decide[s] to give you the job and not use one of their own plumbers." (Hill Dep. 73:18–20.) Unfortunately for Plaintiff, that is not the set of facts here. The record is devoid of any evidence that Rawlings knew of Plaintiff's interest in the plumbing position or that it knew of anyone's interest other than Montoya. Rawlings did not contact anyone; Montoya took the initiative to apply and was offered the position. (Horney Decl. ¶¶ 6, 11; Montoya Decl. ¶ 3.) Plaintiff has not alleged otherwise or provided evidence to the contrary. Even if the Court assumes that Boeing forced Rawlings to hire Montoya or that Aubuchon made misrepresentations to Plaintiff, Plaintiff has not established that Rawlings knew of Plaintiff's interest in the position prior to Rawlings hiring Montoya. Therefore, without knowledge of Plaintiff's interest, Rawlings could not have rejected Plaintiff because of his age.

Accordingly, Plaintiff's ADEA claim against Rawlings fails as a matter of law because Plaintiff is unable to prove a prima facie case of age discrimination.

4. *Were Plaintiff Able to Prove a Prima Facie Case, Plaintiff Would Be Unable to Show that He Was Not Hired Because of His Age.*

■ Assuming, *arguendo*, that Plaintiff is able to make a prima facie case of age discrimination, Plaintiff's ADEA claim would still fail as a matter of law because he cannot prove that, "but for" his age, he would have been hired. The Supreme Court in *Gross*, 129 S.Ct. at 2352, held unequivocally that "a plaintiff bringing a disparate-treatment claim pursuant to the

ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Under the "but-for" causation standard, "a plaintiff must show that age was 'the reason' for the adverse employment action; there is no ADEA liability for 'mixed motive' employment actions." *Timeless Invs., Inc.,* 734 F.Supp.2d at 1062 (citations omitted).

Plaintiff's own testimony supports the conclusion that Plaintiff's age was not the "but for" cause of his rejection. Firstly, as stressed above, Plaintiff did not apply for the position until the position had been filled by Montoya for over a month. (Hill Dep. 76:19–77:12.) Rawlings had neither knowledge nor notice of Plaintiff's interest in the plumbing position. (*Id.* at 76:4–25; Horney Decl. ¶ 7.) Thus, Plaintiff's age cannot be "the reason" Montoya was hired. Secondly, Plaintiff himself believes that Montoya was proffered the position because of: (1) nepotism; (2) Boeing's intent to retaliate against Plaintiff for not signing the Release Agreement; (3) Montoya's ability to "kiss-up"; (4) Montoya's better understanding and knowledge of the Plant's terrain; (5) Plaintiff's age; and (6) Boeing conditioning the contract to service the Plant upon Rawlings hiring Montoya. (Hill Dep. 82:9–86:15.) Among these mixed motives, Plaintiff does not have evidence to prove that his age was "the reason" he did not get the position. In a deposition, Plaintiff expressly stated that he did not have any personal knowledge or any evidence as to Rawlings hiring Montoya because of his comparative youth.[11] (*Id.* at 128:15–18.) Though Plaintiff is correct that all evidence must be construed in a light most favorable to him at this stage of litigation (Opp'n to Rawlings' MSJ 9:11–

---

11. The transcript of the deposition reads:

 Rawlings' Counsel: Do you have personal knowledge or any evidence as to

 Rawlings hiring Mr. Montoya because he was younger than you?
 Plaintiff: No.
(Hill Dep. 128:15–18.)

12), Plaintiff still carries the burden of pointing to evidence on which the jury could reasonably find for him. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In his own words, Plaintiff cannot. (Hill Dep. 128:15–18.)

Furthermore, "ADEA does not make it unlawful for an employer to do a poor job of selecting employees. It merely makes it unlawful to discriminate on the basis of age." *Cotton v. City of Alameda,* 812 F.2d 1245, 1249 (9th Cir.1987) (citation omitted). For the case at hand, Rawlings could have done a better job of hiring by advertising the position and its qualifications, interviewing more than one applicant, and having a more general transparent process. Viewing the undisputed facts in a light most favorable to Plaintiff, nepotism, Boeing's intent to retaliate against Plaintiff for not signing the Release Agreement, Montoya's interpersonal skills, and pressure from Boeing to hire Montoya could all have been factors in Rawlings' decision to hire Montoya. If true, these factors may transgress notions of morality and fairness. They, however, are not grounds for an ADEA claim. None of these factors are prohibited by the ADEA.

Accordingly, Rawlings' Motion for Summary Judgment is GRANTED.

IV. *RULING*

For the foregoing reasons, Boeing and Rawlings' Motions for Summary Judgment are **GRANTED.** Plaintiff's breach of contract claim against Boeing is preempted by § 301 of the LMRA. Plaintiff's ADEA claim against Rawlings fails as a matter of law because Plaintiff cannot make a prima facie case of age discrimination and is unable to show that age was the "but for" cause of Montoya's employment. Rawlings' Evidentiary Objections to Plaintiff's Declaration in Support of His Opposition are **OVERRULED** in their entirety. Plaintiff's "Response to Rawlings' State-

ment of Uncontroverted Facts," which the Court deems as Evidentiary Objections, is **SUSTAINED IN PART AND OVER-RULED IN PART.**

IT IS SO ORDERED.